LOUISA HARBISON, *et al.*, Plaintiffs in Error, *vs.* CHARLES SWAN, Defendant in Error.

1. *Wills—Devises in fee tail—Cross remainders —Statute of 1825—Farrar vs. Christy.*—A will contained the following bequest: " I give and bequeath to my daughter Harriet the north half of my tract of land in "A.," and the south half thereof to my daughter Juliet, and in the event of the death of Harriet or Juliet without issue, the part devised to the one deceased to descend to the survivor; and in the event of the death of both without issue, the said parcels of land shall descend to the heirs of my daughter Mary and my daughter Clarissa, to be equally divided among them when they become of age." Juliet died after the death of testator, leaving a son who survived her but a short time, and his father became then the sole surviving representative of said son. Harriet subsequently died without issue. *Held,* that notwithstanding the manifest intent of the testator to keep the estate in the blood, under the statute touching descents and distributions, it passed to the surviving husband of Juliet.

By the will Juliet was immediately vested with a fee simple title to Harriet's estate, subject to be divested by the birth of children to Harriet, and the latter was in like manner and subject to the same conditions vested with a fee simple in the estate of Juliet. As Juliet had a son who survived her, Harriet's interest in the estate of Juliet ceased. But as Harriet died childless, the fee simple of Juliet in her estate was never divested. Hence, on Harriet's death it passed to the heirs of Juliet and not to the heirs of Harriet. (Farrar vs. Christy, 24 Mo., 453.)

*Error to Cape Girardeau Circuit Court.*

*Louis Houck,* for Plaintiffs in Error.

I. Under our statute of 1825, the remainder of Harriet's fee tail estate can vest in no other person than one who by the course of the common law would be an heir to her estate tail, had the estate not been destroyed. In other words, the statute does not reach a case where the first grantee has no issue. The statute means that the heir of the first·taker shall have the absolute fee simple. Now since Harriet had no issue, and according to the course of the common law the estate devised to her would pass to her issue, and in default thereof to the blood of VanHorn, we maintain that the defendant, Swan, cannot claim her estate by virtue of the Van Horn devise.

II. It will be claimed that under the will Juliet and Harriet each had only a life estate, and that the fee to Juliet's share vested in Harriet, and the fee to Harriet's share in Juliet, subject to be divested by the birth of issue; in other words, that VanHorn's devise raised cross-remainders, and in support of this view of the case, respondent will cite Farrar vs. Christy, (24 Mo., 467). But if the position assumed be correct, that the whole fee was granted to the several devisees, no cross-remainder can arise. While at the time of the execution of the deed in Farrar vs. Christy, neither Edmund nor Howard Christy had heirs, at the time of Van Horn's death Juliet had issue. Certainly it cannot be said that the remainder of Juliet's share vested in Harriet, because it vested in Nathan Swan—Juliet's son. It is evident that the case at bar is not one of cross-remainders. Hence, the Farrar vs. Christy case is not in point.

*Nalle & Sanford*, for Defendant in Error.

I. The estates tail created by the will were destroyed by the act of Feb. 14, 1825, and the life estate vested in each, to the portion of the realty bequeathed them, while the remainder in fee simple absolute to Juliet's portion vested in Harriet, and the remainder in fee simple absolute to Harriet's portion vested in Juliet, subject to be divested in each instance by the birth of issue. (Statutes Mo., 1825, 45, 55, 65, &c.; 1 Hill. Real Prop., p. 504, § 17; 4 Cruse's Dig., p. 379 ; 2 Wash. Real Est., p. 233 ; Farrar vs. Christy, 24 Mo., 467.)

II. The birth of issue to Juliet divested Harriet of the fee to the portion bequeathed to Juliet. (Farrar vs. Christy, *supra*.)

III. At the death of Juliet, Harriet dying without issue, also, the whole estate vested in the only child of Juliet, and at the death of this child descended to his father, this defendant Swan.

NAPTON, Judge, delivered the opinion of the court.

The controversy in this case grew out of certain provisions in the will of Nathan VanHorn, the plaintiffs and defendant being his descendants, and both claiming under the same provisions. These provisions of the will and the facts agreed on, present the only question in the case.

The agreed facts are, that Nathan VanHorn made his will on April 13, 1846; that he died sometime in January, 1852; that his will was duly probated, etc. Juliet and Harriet Van Horn, his daughters, (he had other daughters and sons) were, at the date of making the will, unmarried. Juliet was afterwards, and before the death of her father, married to the defendant, Chas. Swan. When her father's will took effect, that is, on his death, there was living as her issue from her marriage with defendant, their son, Nathan Swan. Juliet died on or about March 19, 1852. Sometime in September of this year (1852) the son, Nathan, died, without issue and intestate, and the defendant, his father, is the sole surviving representative of said Nathan Swan.

Harriet VanHorn, after the making of the will, was married, but had no issue, and died about the year 1868, intestate, and her husband is dead.

The real estate in controversy consists of the two tracts of land devised to Juliet and Harriet, by the aforesaid will of their father, Nathan VanHorn. The defendant is in possession of the whole tract, and obtained possession of Harriet's part after her death.

The plaintiffs are the descendants of Mary VanHorn (subsequently Harbison) and of Clarissa VanHorn, who married Dickerson. They, Mary and Clarissa, were sisters of Harriet and Juliet. There is no question of the title of Nathan Van Horn at the time of his death, and the rights of the parties depend on the construction of two clauses in his will, which are as follows:

Fifth. "I give and bequeath to my daughter Harriet the north half or division of my tract of land as will appear by

a plat of the survey made by Aaron Snider on the 25th and 26th March 1840, which north division contains 320.53 acres as will appear by reference to the plat of survey. Also an account of advances made her, as will appear by reference to said account."

Sixth. "I give and devise to my daughter Juliet VanHorn the south part of the aforementioned survey made by Aaron Snider on the 25th and 26th days of March, 1840, which south part includes my plantation, except the one hundred acres off the south end of this part of the survey, devised to my daughter Delia. The residue of this part of the survey contains 325.41 acres. I also devise to Juliet an account of advances made her, as will appear by reference to the account; and in the event of the death of my daughter Harriet or my daughter Juliet without issue, the part devised to the one deceased to descend to the survivor, and in the event of the death of both without issue, then it is my will that the aforesaid parcels of land shall descend to the heirs of my daughter Mary and the heirs of my daughter Clarissa, to be equally divided among them when they become of age."

In order to show the views of the plaintiffs and defendant, in regard to the construction of this will, we copy the instructions asked on either side.

For plaintiffs the court was asked to say: 1st. "That the heirs of Mary and Clarissa were seized in fee in remainder, respectively, of the portions of land devised to Juliet and Harriet. 2d. That upon the death of Nathan Swan, son of Juliet, Harriet, as the survivor, was entitled to said Juliet's share, as bequeathed to said Juliet by said Nathan VanHorn, and that the said Harriet having died without issue, the said Louisa Harbison, Wm. P., Virginia, etc. (descendants of Mary and Clarissa) are entitled to the possession. 3d. Said Juliet and Harriet, under said will, were respectively seized of a life estate, and the remainder was by said will vested in the heirs of Mary and Clarissa, subject to be divested by the birth of issue, and since no issue was born to said Harriet, the real estate devised to said Harriet, the fee of which was

vested in the heirs of said Mary and Clarissa, was never divested, and the said Harbison, etc., heirs of Mary and Clarissa are entitled to the possession, etc.    4th. The limitation over to the heirs of Mary and Clarissa is good as an executory devise, and no issue of either Harriet or Juliet being living at the time of Harriet's death, the heirs of said Mary and Clarissa are entitled."

These instructions were all refused, and the defendant's given, which were as follows:

"Juliet VanHorn and Harriet VanHorn were vested with a life estate in a moiety of the land; that Juliet was then vested with the remainder in fee to the part devised to Harriet, and that Harriet was vested with the remainder in fee to the part devised to Juliet, subject to be divested by issue born to Juliet; that no issue having been born to Harriet, the remainder in fee, with which Juliet was vested by said devise, to Harriet's part or moiety was never divested out of Juliet; that upon Juliet's death the same descended to her son Nathan, and upon his death it was cast upon the father, the defendant; that upon the death of Harriet the defendant became seized of the moiety or part so devised to Harriet in fee simple absolute; that the remainder in fee, with which Harriet was vested by the devise, to the part devised to Juliet, was by the birth of issue to Juliet divested out of Harriet, and Juliet's son Nathan became invested with the said remainder in fee of his mother's part, and upon Nathan's death his father became seized of this part or moiety so devised to Juliet in fee simple absolute."

The court of course, after giving this instruction, gave judgment for defendant, and the propriety of this judgment is the only question here.

It may be observed and has been objected, that under the construction given to this will by the Circuit Court, the intent of the testator is totally frustrated. For Juliet died in 1852, leaving one son who lived a few months after his mother's death, and consequently, so far as Juliet's estate is concerned, became the owner in fee of her interest, and upon

his death the title passed to his father. And Harriet dying sixteen years afterwards without issue, her estate, according to the instruction, passed to Juliet's heir (who was her husband) not to her issue, the son, who was dead long before the death of Harriet, and thus the whole estate, so far from being kept in the blood of the testator, passes to an entire stranger.

But though this result may have been far from the intention of the testator, it does not follow that the courts are at liberty to disregard the fixed rules of law or the provisions of our statute of descents and distributions. This statute makes the father heir to the son, and totally abolishes the English law of keeping an estate in the blood of the first purchaser.

This will manifestly created an estate tail at common law in his daughters Harriet and Juliet, with remainder to the survivor, in the event of the failure of issue of the one dead, and in the event of the death of both without issue, remainder to the heirs of two other daughters named, who are plaintiffs in this case. Upon the death of Juliet, leaving a son, her estate manifestly passed to him, but her sister was then living, and survived this son nearly sixteen years, and upon the death of this sister Harriet, it is decided that her estate goes to the heir of the son, who was the husband of Juliet.

We have then in this case, which was an attempt to create a fee tail, a life estate in Harriet and Juliet in the specific land devised to each, with cross-remainders to the one surviving, and a devise over, in the event of both dying without issue, to the plaintiffs, who are heirs of two other sisters. Juliet had a son who survived her. Upon her death, the son clearly took her estate ; and it is equally clear that after this event the devise to the daughters Mary and Clarissa, whose representatives are plaintiffs, failed, and they have no claim under the will. For the contingency upon which their title rested never rose. Juliet did not die without issue, and the remainder to them was placed on this contingency. That the issue of Juliet died long before the death of Harriet, the surviving sister, and that the heir of this issue was a stranger to the blood of the devisor, is merely the result of our statute law.

So far everything is plain enough, but when we come to Harriet's estate, the difficulty arises; and there is no difficulty in regard to this, if we adhere to the decision of this court in Farrar vs. Christy (24 Mó., 453). Juliet was, according to this decision, immediately vested with a fee simple title to Harriet's estate, subject to be divested by the birth of children to Harriet, and Harriet was immediately vested with the fee simple in Juliet's estate, subject to be divested by the birth of children to Juliet. As Juliet had a son who survived her, Harriet's interest in the estate of Juliet ceased.; but as Harriet died without children, the fee simple of Juliet in Harriet's estate was never divested. Therefore it passed on Harriet's death to the heirs of Juliet and not to the heirs of Harriet.

The decision of this court, in Farrar vs. Christy, was based on a construction of our statute of 1825, abolishing entails, which has been severely criticized by the counsel in this case, and which undoubtedly tends to results not altogether such as the testator contemplated. The statute of 1825, declares that on the termination of the life estate to which it converted the entail, the remainder should pass in fee simple absolute "to the person or persons to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass according to the course of the common law, by virtue of such devise, gift, grant, or conveyance."

This court held in the case of Farrar vs. Christy, that the estate did not pass to the heir of the first taker, according to the course of the common law, but to the party indicated by the deed or devise as the second taker. And as they held that the fee simple was vested on the execution of the deed in that case in Howard and Edmund Christy, subject only to be divested by the birth of issue, although Howard survived his brother Edmund many years, they held Edmund's estate to pass to his heirs, because Howard died without issue, as did also Edmund.

In that case, this construction seemed to defeat the intention of the deed, and there was a dissenting judge. But the

court observed, " It is unquestionably a maxim of our law, that all deeds shall be construed favorably, and as near the apparent intention of the parties as possible, consistently with the rules of law. If, however, the intention of the parties is contrary to the rules of law, it will then be otherwise; for it would be highly inconvenient and improper to permit private persons to contradict the general rules of law. The parties have created an estate tail against the policy of the law; the statute has declared that such estates shall not exist, and has prescribed the disposition of them. Now in dealing with the subject, it is obviously the duty of the courts to regard the intent of the legislature, and not that of the parties. The construction of the act is not designed for the circumstances of this particular case only, but for all others that may arise."

And the present case is likewise one in which the intent of the testator is most clearly subverted by an adherence to the construction of the statute of 1825, established in Farrar vs. Christy, or rather, it results from the doctrine established in that case, that, though Howard and Edmund had each a life estate in the lots given or conveyed to each, each had respectively a fee simple absolute in remainder to the lots conveyed to the other, subject to be defeated by the birth of issue, and this was maintained on the ground that to decide otherwise would leave the fee simple in abeyance.

This construction of the deed in Farrar vs. Christy was deliberately made after full argument, though Judge Leonard dissented, but as no opinion of his was filed, we may conclude that he merely entertained doubts, and the opinion of Judge Scott may be regarded as settling the question here. In truth, there is no hardship in this opinion but what arises from our statute of descents, under which a stranger to the blood of the first purchaser may occasionally come into the estate.

Here the testator evidently means to devise to his daughters Harriet and Juliet two defined tracts of land, with cross-remainders, so that the one should take the part devised to

the other, in the event that either died.without issue, and in the event that neither had issue, he devised over to two other daughters or their descendants. But one of the daughters preferred had issue, and consequently the devise over failed. This issue of course took the title of his mother, and as the fee vested, according to Farrar vs. Christy, immediately in the mother to her sister's estate, subject only to be divested by issue of the sister, the heirs of the mother hold that title. And as the defendant is that heir, upon the death of his son, his title is complete.

We therefore affirm the judgment of the Circuit Court; the other judges concur.