———o———

BURRELL THOMPSON, Defendant in Error, vs. HUGH CRAIG, Plaintiff in Error.

1. *Wills—Devises—What construed to be for life only—Executory agreement for sale of land—Purchase money, payment of, not enforceable, when.*—A will after bequeathing to testator's grandchildren, A. and B., certain described real estate, contained the following provision: "If either of my grandchildren shall die before lawful age, or before leaving a lawful heir or heirs, the above property shall descend to the survivor and his heirs or legal representatives; and if both grandchildren shall die before marriage, or leave no lawful issue by marriage, said estate shall be sold for the benefit of the ·poor," etc., etc. *Held*, that the will gave only a life .estate to A. & B.; that the arrival of A. at a majority and his marriage, and the birth of children to him did not change the character of his estate, and authorize him to convey a fee simple title; and in such case it was held that he could not enforce an agreement (being an executory one) under which the bargainee agreed to pay him a given sum of money "provided that within twelve months" the bargainor should be "competent to give him an unincumbered title· to the land."

*Error to Saline County Circuit Court.*

*Draffin & Williams*, for Plaintiff in Error.

I. Under the will of Philip W. Thompson, dec'd, the plaintiff did not take the land *in fee*, and could not convey to the defendant a good title to the same. (Harbison vs. Swan, 58 Mo. 147; Farrar vs. Christy, 24 Mo. 467; Overton vs. Davy's Ex'r, 20 Mo. 273.) Wells vs. Wells, 10 Mo. 193, properly understood, does not maintain the contrary.

II. The agreement being executory, the defendant will not be compelled to pay the purchase money until the plaintiff is able to make to him a good title to the land. (Wellman vs. Dismukes, 42 Mo. 101.)

*C. Breathitt and T. J. Werby*, for Defendant in Error.

I. Where an estate is given by will upon the happening of two events, whichever happens first vests a fee simple estate in the donee. (Part 1st Redf. Wills, 2nd Ed. pp. 473, 474, § 4, and two last lines of note 6; 1 Jarm. Wills, 4 Ed., p. 427, side pages 444, 445; Id. vol. 2, p. 129, side page 175, § 3; Wells vs. Wells, 10 Mo. 193, affirmed in Overton vs. Davy's Ex'r, 20 Mo. 273.)

II. The intent of the testator must be ascertained by rules of law. (Austin vs. Watts, 19 Mo. 298; Chism's Adm'rs vs. Williams, 29 Mo. 288.)

HENRY, Judge, delivered the opinion of the court.

This was an action in the Saline circuit court by plaintiff against defendant, on a written agreement, by which defendant bound himself to pay to plaintiff six hundred and twenty-five dollars for that portion of section number twenty-four, township number fifty, range number nineteen, lying east of Pere Flesh Creek, provided plaintiff, within twelve months of the date of said agreement, 6th day of December, 1872, should be competent to give an unincumbered title to said land. Plaintiff alleges in his petition, that at the end of the twelve months he was competent to give the defendant an unincumbered title to said land, and that he made a good and sufficient deed to said land and tendered it to defendant, who refused to receive it.

Defendant's answer admits the execution of the written agreement, but denies that plaintiff was at any time able to make a good title to said land.

There was a trial of said cause in said court, at its October term, 1874, before the court without a jury, and the finding was for plaintiff for the amount claimed with interest.

In due time defendant filed his motion for a new trial, which was overruled, and he has brought the case here by writ of error. The whole case turns on the construction of the last will and testament of Philip W. Thompson, deceased.

Those portions of the will bearing on the question under consideration are as follows : " I give, grant and devise, and bequeath to my said grandchild, Burrell Thompson, (saving the life interest above granted and devised to my wife Penelope Thompson) all of the lands and improvements which lie," etc., embracing the land in question.

" I give, grant, devise, and bequeath to my granddaughter, Mary Huston, the lands of my estate situate, etc." ( describing other lands than those devised to plaintiff. ) " It is my will that in the event that either of my grandchildren, above named, shall die before lawful age, or before leaving a lawful heir or heirs, the property above specified, and intended to be given in this will, shall descend to and belong to the survivor of said grandchildren only, and to his or her heirs or legal representatives, and in the event of both said grandchildren, viz : Burrell Thompson and Mary Huston dying before marriage, or in the event of leaving no lawful issue by marriage as aforesaid, it is my will that all my estate, intended in this will for them, shall be sold for the use and benefit of the poor persons of Saline county, Missouri, to be expended and paid as my executor may deem advisable and just."

It was admitted that plaintiff was twenty-one years of age and had a child or children living ; and this, the last will of Philip W. Thompson and the written agreement sued on, were the evidence in the case. The defendant asked the court for the following declarations of law :

" That the plaintiff in this cause has only a conditional estate in the land mentioned in the petition, and if plaintiff shall die without leaving lawful issue, then and in that event the estate of the plaintiff in said land would cease, although the court may believe from the evidence that the plaintiff has arrived at the age of majority." This the court refused, and the question for consideration is; whether that declaration of law should have been given, and that will be answered when it is determined what estate in

the land plaintiff took under the last will of Philip W. Thompson. There are two decisions of this court which, in our judgment, are decisive as to the estate plaintiff holds under the will.

The case of Harbison vs. Swan, (58 Mo. 147,) was, in all its material facts, similar to this.

Nathan Van Horn made his last will and testament, and the two clauses of the will upon which the rights of the parties depended, were as follows: " I give and bequeath to my daughter, Harriet, the north half or division of my tract of land, as will appear by a plat of the survey made by Aaron Snider, etc." " Sixth, I give and devise to my daughter, Juliet Van Horn, the south part of the aforementioned survey made by Aaron Snider, and in the event of the death of my daughter Harriet, or my daughter Juliet, without issue, the part devised to the one deceased to descend to the survivor, and in the event of the death of both without issue, then it is my will that the aforesaid parcels of land shall descend to the heirs of my daughter Mary, and the heirs of my daughter Clarissa, to be equally divided among them when they become of age."  Judge Napton, who delivered the opinion of the court, held that the will created " a life estate in Harriet and Juliet in the specific land devised to each with cross remainders to the one surviving, and a devise over, in the event of both dying without issue, to the plaintiffs, who were heirs of two other sisters."

In Farrar vs. Christy's Administrators, (24 Mo. 453,) the controversy arose on a deed executed by Wm. Christy and wife to their two sons, Howard and Edmund.  The deed contained the following words : " To have and to hold the premises aforesaid, with all the appurtenances thereto belonging, to them and their heirs forever, upon condition that should either of the grantees herein named, die without leaving legal heirs of their body, the survivor shall inherit the whole of the property herein conveyed ; and should both die without leaving legal heirs as aforesaid, the property hereby conveyed shall revert to the other legal heirs of the said William and Martha T."

The lots referred to in the deed were conveyed by separate metes and bounds, two to Howard and two to Edmund.  The

court held that this deed created estates tail in Howard and Ed-
mund Christy, and that, as soon as that was done, those estates
became subject to the operation of the fourth section of the act
regulating conveyances, approved Feb'y 14, 1825, and con-
verted the estate of each in the lot granted to him, into an es-
tate for life.

In the case at bar there can be no question that the will of
Philip Thompson gave to plaintiff only an estate for life in
the lands devised to him. His marriage, and the birth of chil-
dren to him, did not change the character of his estate. He may
survive his children, and, in that event, by the express terms of
the will, the lands are devised to Mary Huston, and if she be dead
without having left children, to the poor of Saline county.

The case of Wells vs. Wells, (10 Mo. 193,) is not at all anal-
ogous to the case under consideration. That was the case of a
devise to certain legatees, with a condition, that if either of such
legatees should die before coming of age or marriage, the por-
tion of such legatee should be equally divided among the others."

One of the legatees married, and afterwards died under age,
and the question was whether her portion was to be divided
among the other legatees.

The court held that "there were two events, either of which
would free the estates of the children by the last marriage from
any contingency, namely, the dying under age, or marrying."
* * * The clear implication from the will is, that by attain-
ing a majority, or marrying, the estate of a child was freed from
any limitation and became absolute." Per Scott J. Overton
and wife vs. Davy's Ex'r, (20 Mo. 278) is similar to Wells vs.
Wells, and was decided upon the same principle ; but has no ap-
plication whatever to the question involved in the case at bar. It
is not necessary to inquire what estate each of the devisees took
under the will of Philip Thompson in the land specifically devised
to the other.

Burrell Thompson sold a part of the land expressly devised
to him, and not the land devised to Mary Huston. As he had but
a life estate in the land sold by him to defendant, he could not
make him such a title as his agreement with defendant called for,

and as it was an executory agreement, defendant will not be compelled to pay the purchase money until plaintiff is able to comply with the stipulations on his part. (Wellman's adm'r vs. Dismukes, 42 Mo. 101.)

With the concurrence of the other judges, the judgment of the circuit court is reversed and the suit dismissed.