## WEAD, *Appellant,* v. GRAY.

1. **Wills**: ABSOLUTE POWER OF DISPOSAL CONFERRED BY WILL: EXECU-
TORY DEVISE. A will was as follows: " I give and bequeath to my
only child, Rachel  *  *  all my property, real, personal and
mixed,  *  *  wishing my said daughter to have, use and
dispose of the same absolutely in any way that may seem to her
best,  *  *  it being the intention of this, my last will and
testament, that my said daughter shall have and dispose of all my
said property in her own right as absolute owner  *  *  and
that the same, and its proceeds and increase, if not disposed of and
expended by her in her lifetime, shall descend at her death to her
children  *  *  ; but if the said Rachel should die leaving
no children nor their descendants, and without having disposed of
said property, it is then my will that out of what may remain un-
disposed of by her," certain specified legacies should be paid. *Held,*
1st, that the will vested in the daughter of the testatrix an absolute
and unlimited estate; 2nd, that the absolute power of disposal
vested in the daughter included the power to dispose of the prop-
erty by will as well as by deed; 3rd, that the limitation over to the
legatees was void as an executory devise, being inconsistent with
the absolute power of disposal vested in the daughter.

2. **Deeds of Trust**: RELEASE: MERGER. Where there were several
notes secured by successive deeds of trust on the same land, and
two of the notes were devised to the owner of the equity of redemp-
tion ; *Held,* that although the technical doctrine of merger had no
application, yet in the absence of any evidence that the devisee had
kept the two notes alive, the devise would be treated as a release
and cancellation of them.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*W. B. Homer* and *Levi Davis* for appellant.

*M. L. Gray* for respondents.

HENRY, J.—This is a suit in which plaintiff asks the
cancellation of two deeds of trust on certain real estate in
Kirkwood, St. Louis county, and the facts of the case are
as follows:

Spencer Smith was seized of said real estate in fee,

and, in July, 1861, he borrowed of Mrs. McLean $1,000, for which he executed his note and a deed of trust on said real estate to secure it. In 1866 he borrowed of M. L. Gray $2,482, for which he executed his note and a deed of trust on the same property. In 1870 Smith died leaving a will, by which he devised said real estate to his wife Rachel. The two notes above mentioned were at her death in March, 1874, owned by Mrs. Charlotte Wead, mother of Rachel Smith. She died testate, and the following is a copy of her last will and testament:

"I, Charlotte Wead, of St. Louis, State of Missouri, being, according to my own apprehension, of sound and disposing mind, do make, ordain and publish this, my last will and testament: I give and bequeath to my only child, Rachel E. Smith, wife of Spencer Smith, now of St. Louis, State of Missouri, all of my property, real, personal and mixed, and all moneys and rights of action of every kind which may belong to me, or to which I may be in any way entitled at my decease, wishing my said daughter to have, use and dispose of the same absolutely in any way that may seem to her best, and for her own sole and separate use and benefit, and entirely free and clear and exclusive of any and all right, interference or control of her husband, the said Spencer Smith; it being the intention and meaning of this, my last will and testament, that my said daughter, Rachel E. Smith, shall have and dispose of all my said property in her own right as absolute owner and as though she were a *femme sole*, and that the same, and its proceeds and increase, if not disposed of and expended by her in her lifetime, shall descend at her death to her children and exclusive of her said husband; but if the said Rachel E. should die leaving no children nor their descendants, and without having disposed of the said property, it is then my will that out of what may remain undisposed of by her the sum of $200 shall be paid to the Domestic Missionary Society of the Protestant Episcopal Church, in the United States of America, and that the remainder of

what may be left undisposed of by my said daughter at her death, shall be put at interest on good security and the interest thereof annually shall be paid to my niece, Ann S. Beach, during her natural life for her own separate and exclusive benefit, and at her death the remainder shall be paid to the above named Domestic Missionary Society, to be applied to the use of said society. In witness," etc.

In August, 1874, M. L. Gray, respondent, was appointed administrator with the will annexed of said estate, and took possession of and holds said notes. Mrs. Smith survived her mother, and died in January, 1875, leaving a will, of which the following is a copy:

"I, Rachel E. Smith, of Kirkwood, St. Louis county, Missouri, do make, publish and declare the following to be my last will and testament: I desire all my just debts to be paid, including the incumbrances on my residence property at Kirkwood, placed there by my late husband, Spencer Smith. I make the following bequests: To Mrs. Ann S. Lear I give my watch and $500. To Reginald Heber Lear, son of Ann S. Lear, I give, for his name, $500, to be paid him upon his arriving at the age of twenty-one years. All the rest of my property, real, personal and mixed, I give and bequeath to Charles Minor Wead, the son of D. D. Wead, now of Sheldon, Vermont, whom I hereby adopt as my son and heir, for I love him as such and believe him to be fully worthy of that love. In the event that my estate shall not be sufficient, after the payment of debts, fully to satisfy the bequests to Ann S. Lear and Reginald Heber Lear, I desire and direct in such case that the above bequests to Ann S. Lear and Reginald Heber Lear be paid *pro rata* so far as the property will go. I name and appoint my friend Melvin L. Gray, of St. Louis, executor of my last will and testament."

At her death there were other deeds of trust upon said real estate, executed by her husband in his lifetime, in which Charlotte Wead never had any interest. M. L. Gray, as administrator of the estate of Charlotte Wead,

inventoried the two notes held by Mrs. Wead as assets of her estate, and, contending that they are subsisting claims against the said real estate, refused to deliver them to appellant, and, on the same ground, the Domestic Missionary Society of the Protestant Episcopal Church, and Ann S. Lear claim an interest in said notes as legatees under Mrs. Wead's will. The circuit court rendered a decree in favor of plaintiff, which, on appeal to the St. Louis court of appeals, was reversed, and plaintiff has prosecuted his appeal to this court.

The case turns upon the construction of Mrs. Wead's will, and the principal question is: What estate in the property mentioned in that will, did Mrs. Smith take? Respondents insist that, by the will only a life estate was given to her, and appellants, that she took an absolute unlimited estate. If the latter be the proper construction of the will, neither the Missionary Society nor Mrs. Lear has any interest in the estate, and the decree of the circuit court was right.

1. WILLS: absolute power of disposal conferred by will: executory devise.

Respondents, for their construction of the will, rely upon a class of cases, in which express life estates were given by the wills with power of disposition over the property, in some instances as broad as that given by Mrs. Wead's will, in others more restricted; but generally, where no estate for life was created in express terms, the wills have been held to give the absolute property, notwithstanding a limitation over of what might remain undisposed of by the first taker. There are exceptional cases. *Smith v. Bell*, 6 Pet. 68, relied upon by respondents' counsel, is of that class. But that case has not been followed in this State. In *Reinders v. Koppelmann*, 68 No. 491, Judge Napton, delivering the opinion of this court, quotes what was said by Sir William Grant in *Barford v. Street*, 16 Ves. 135: "An estate for life with an unqualified power of appointing the inheritance, comprehends everything. By her interest she can convey her life estate. By the unlimited power she can appoint the inheritance. The whole fee

is then subject to her disposition," and Judge Napton adds: "A party cannot give an unlimited dominion of his property to one, and at the same time, a limited right in it to another; in other words, a remainder cannot be engrafted on a fee."

In the construction of a will, it is a question of intention, to be ascertained by construing all parts of the will together, and the intention, if not in contravention of some inflexible rule of law, is to control. It would be difficult to find words more apt to convey an absolute and unlimited ownership of personal property than those employed in Mrs. Wead's will, and the language clearly expresses that intention. That portion of the will by which it is attempted to give the property undisposed of by Mrs. Smith at her death, to respondents, was intended to meet a probable contingency, and was, as is not unfrequently the case, an abortive effort to give to one the absolute property, and at the same time " to engraft a remainder upon it," but by no means thereby intending to abridge the estate previously conferred upon the first taker. That by will, there may be a limitation of a future estate or interest in land or personal property, which cannot consistently, with the rules of law, take effect as a remainder, but may notwithstanding be upheld as an executory devise, we concede; but this question will be noticed hereafter.

In *Gregory v. Cowgill,* 19 Mo. 416, it is announced as a general rule, " that the devise of an estate generally and indefinitely, with a power of disposition over it, carries a fee." In *Rubey v. Barnett,* 12 Mo. 3, a life estate was in express terms given to the wife. In *Chiles v. Bartleson,* 21 Mo. 344, by one clause of the will, certain property was given to the wife—no power of disposition expressed, and no words declaring the extent of her estate; but, by a subsequent clause, the property given to her, not what might remain, but the identical property, was, at her death, to be equally divided between the testator's four children. It is clear enough that the wife took but a life estate. The lan-

guage employed in the will passed upon in the *State ex rel. Haines v. Tolson*, 73 Mo. 320 : "To have, hold and enjoy, to the only proper use and behoof of the said M. S. Paige and her heirs forever," does not more clearly indicate an intention to give an absolute estate in the property than does the language of Mrs. Wead's will. That, in the absence of a limitation over, it would pass an absolute ownership, no one would deny. To this all the cases agree ; and if, from the whole instrument the intent to give only a life estate had been manifest in the will under consideration in the *State ex rel. v. Tolson*, those additional words would not have controlled in determining the character of the estate of the first taker. By a technical rule of law the word "heirs" was necessary in a common law conveyance to create an estate of inheritance, but in wills, other words, indicating the same intent, are of equal force. If the language in Mrs. Wead's will in the bequest to Mrs. Smith means just what the language of the will in the *State ex rel. v. Tolson* means, the cases are parallel. *Turner v. Timberlake*, 53 Mo. 378, is distinguishable from this, in that there the testator, in one clause of his will, provided for the sale of specific property for the payment of debts, and the succeeding clause was as follows : "I give and bequeath to my wife and my two children, (naming them,) the remainder of all my lands, negroes and other property       *       *       that may remain after liquidation of my debts, to be disposed of by my wife in any way she may think best, so that the property or its effects may be appropriated to her use and benefit during her natural life, and at her natural death, the remainder to the children." Here a life estate was given to the wife with a power of disposition. It was so construed by this court, but it is by no means an authority for the construction of Mrs. Wead's will contended for by respondents. Nor is there any conflict between *Bryant v. Christian*, 58 Mo. 98; *Carr v. Dings*, 58 Mo. 400; *Harbison v. Swan*, 58 Mo. 147, or *Thompson v. Craig*, 64 Mo. 312, and what is herein announced. *Foote*

*v. Sanders*, 72 Mo. 616, fully sustains the views expressed in this opinion, and, in that case it was expressly declared that the doctrine of *Smith v. Bell*, 6 Pet. 68, does not obtain in this State, but that the contrary was held in *Owen v. Ellis*, 64 Mo. 77; *Campbell v. Johnson*, 65 Mo. 439, and *Owen v. Switzer*, 51 Mo. 322.

But conceding for the argument, that on a proper construction of the will, Mrs. Smith took a life estate with the power of disposition, the contingency in which the respondents were to take was that there was property embraced in the will undisposed of by Mrs. Smith at her death. The language of the will is: "But if the said Rachel should die leaving no children, nor their descendants, and without having disposed of the said property," then such remainder is to go to the respondents. The absolute power of disposition given by the will to Mrs. Smith, included the power to dispose of the property as well by will as by deeds to real estate, or bills of sale of personal property. *Kimball v. Sullivan*, 113 Mass. 345. The power was to dispose of all the property, " in her own right as absolute owner, and as though she was a *femme sole*," and the respondents were to take only such of the property as remained undisposed of by Mrs. Smith, and there was none.

The limitation over was void as an executory devise. Mr. Sedgwick, in his work on Wills, vol. 2, p. 277, says: " It is a settled rule of American as well as English law, that where the first devisee has the absolute right to dispose of the property in his own unlimited discretion, and not a mere power of appointment among certain specified persons or classes, any estate over is void, as being inconsitent with the first gift." *State ex rel. Haines v. Tolson, supra.* In order to hold the limitation over, to be good as an executory devise, the power to dispose of the property given to Mrs. Smith must be rejected.

The technical doctrine of merger has no application to the facts of this case. Mrs. Smith derived no legal or

2. DEEDS OF TRUST: equitable title to the real estate in question, release: merger. under Mrs. Wead's will. She never held the legal title. After the two notes were bequeathed to her by Mrs. Wead, the legal title was still outstanding under the other mortgages executed by her husband, Spencer Smith, in his lifetime. Mrs. Wead had neither the legal nor the equitable title to devise. She was not the mortgagee. She became, as assignee of the notes secured by the mortgage, the beneficiary, but the legal title to the land was in the trustee. The bequest of the notes to Mrs. Smith, who owned, under her husband's will, the equity of redemption, in the real estate, was, in effect, a release or cancellation of the debts. While she had the right to keep the notes alive, if she saw proper, yet it required some act on her part to do it. They were hers from the death of Mrs. Wead, subject to any demands of creditors of that estate, and the case is to be treated, there being no creditors of Mrs. Wead's estate, as if Mr. Gray had, as he might have done with safety, delivered them to Mrs. Smith in her lifetime. They would have been in her hands as if cancelled, just as a note in the hands of a debtor, who has discharged it, possesses no obligatory character. If found among his papers at his death, no one could base any claim upon it. In his lifetime he might have re-issued it, or by his will, for some purposes, kept it alive, but otherwise it ceased to be an obligation.

Mrs. Smith, in her will, requires that the mortgages on her property should be paid, but evidently she had in her mind the other mortgages which were liens upon her land. It would be a violent construction of her language to apply it to debts against the property of which she had become owner, and no reason is perceived or can be conjectured, why she should desire to keep in life and force the notes in question. Certainly not for the benefit of respondents, for whom no provision is made in her will, but on the contrary, her express desire was, that all of the property should go to other parties.

The judgment of the court of appeals is reversed. All concur.