## GANNON et al., Appellants, v. PAUK et al.

### Division One, July 1, 1904.

1. **WILLS: Unnecessary Words.** After words have been used, which standing alone create a fee, the addition of other unnecessary words having the same meaning often evinces a lack of confidence on the part of the writer in the force of the words previously used, and for that reason casts a doubt on the meaning of all the words used or what the testator intended thereby.

2. ———: **Implied Power of Disposal: Executory Devise.** The power of disposition implied in every grant of a fee simple, will not render void an otherwise valid executory devise, but when the fee is granted, and, besides that, the power of disposition is added, then there can be no limitation over.

3. ————: ————: ————: **Restriction.** A will gave, devised and bequeathed to two sons eighty acres of land, and added, "It is my will that the same shall not be sold, at least not before the younger of the two becomes of lawful age." *Held,* that this will did not give such power of disposition, in addition to the estate given, as would render void a subsequently attempted executory devise, but the most that can be said of it is, that it aimed to restrict the power of sale which would be implied in the estate given had not these words been used.

4. ————: ————: **Determinable.** An executory devise may be created to take effect as well on a condition that will terminate an estate tail. as upon one that will terminate an estate in fee simple.

5. ————: **Word "Heirs:" Estate Tail.** Our statute which renders the word "heirs" unnecessary in the grant of an estate in fee under certain conditions, has no reference to estates tail; they are to be judged by the law as it comes to us from England.

6. ————: ————: **Mean "Issue."** If from the whole will the testator's intention was to limit the estate to devisees' descendants in like line, the word "heirs" will be held to mean "heirs of the body." And if other provisions of the will will be harmonized by so rendering the word, a devise to two sons "and their heirs and assigns forever" will be held to mean a devise to the sons and their bodily heirs. And that intention is manifest in this will by the subsequent cross-limitation of the estate to the issue of the surviving son.

7. ————: **Fee: Subsequent Words of Limitation: Implied Estate Tail: Executory Devise.** Where words in a will, sufficient, if standing alone, to give an estate in fee, are followed by a clause providing that if the devisee should die without issue, the estate should revert to the heirs of the testator or go over to another as an executory devise, the estate to the first devisee is, by implication, cut down to an estate tail. In such case the words "dying without issue" mean issue living at the testator's death and not at the devisee's death. (Distinguishing and criticising Yocum v. Siler, 160 Mo. 281.)

8. ————: **Issue: Statute of 1845.** The statute of 1845 by its terms applies only to remainders, and not to executory devises, and hence it is not authority for holding that the word "issue," in the clause of a will creating an executory devise, means "issue living at the time of the death of the ancestor named."

9. ————: **Executory Devise: Determinable Condition: "Heirs:" Estate Tail: Statute of 1845.** The will provided: "I give, devise and bequeath unto my two sons, Michael J. Gannon, Jr.,

and Joseph E. Gannon and unto their heirs and assigns forever, my farm lying and being in the county of St. Louis. . . . It is my will that the same shall not be sold—at least not before the younger of the two, that is, Joseph E. Gannon, becomes of lawful age; and should either of them die without issue, then the survivor, his heirs and assigns, to take, own and have the part and portion hereby bequeathed to the one so dying. And in the event both should die without leaving any issue then it is my will that my surviving heirs (with the exception of my son, John T. Gannon, who has had his share) shall have such property like and like." The sons sold the land, and afterwards both died leaving issue, and this suit is by their children to recover from the purchasers. *Held, first,* that the estate devised to the two sons was not a fee determinable as to each upon his dying without issue living, but was what by the common law would be an estate tail, which, under our statute, is reduced to an estate for life in the sons, with the remainder in fee to the next in line; *second,* the word "heirs" in the first sentence is explained by the word "issue" ·in the next, and those words are to be taken together, and when that is done, by "heirs" the testator meant heirs of the bodies of the testator's sons; *third,* the limitation to the surviving son was a good remainder, because a remainder may be limited upon an estate tail; *fourth,* the estate does not derive its character as an estate tail by being cut down by the limitation to an executory devise determinable upon a condition which never occurred, but by using the word "heirs" in the sense of "issue" in the first sentence the will at the outset created an estate tail; *fifth,* even if the first sentence created an estate in fee, the subsequent reversionary provisions cut that estate down to an estate tail; and, *sixth,* the statute of 1845 applies by its terms to remainders, and not to executory devises, and hence that statute is no authority for holding that the word "issue" used in this will means "issue living at the death of the person named as ancestor," but should be held to mean, as at common law, issue living at the death of the testator.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

REVERSED AND REMANDED.

*Henry T. Kent* and *James W. Williams* for appellants.

*T. K. Skinker* and *Charles Cummings Collins* for respondents.

VALLIANT, J.—This is a suit in ejectment. Michael J. Gannon, the common source of title, died in 1870, leaving a will devising the land in question to his two sons, Michael and Joseph, in the following words:

"Fourth. I give, devise and bequeath unto my two sons, Michael J. Gannon, Jr., and Joseph E. Gannon, and unto their heirs and assigns forever, my farm lying and being in the county of St. Louis and State of Missouri, which lies in the southern limits of Kirkwood, containing eighty acres, be the same more or less. It is my will that the same shall not be sold—at least not before the younger of the two, that is, Joseph E. Gannon, becomes of lawful age; and should either of them die without issue, then the survivor, his heirs and assigns, to take, own and have the part and portion hereby bequeathed to the one so dying. And in the event both should die without leaving any issue then it is my will that my surviving heirs (with the exception of my son, John T. Gannon, who has had his share) shall have such property like and like."

It is stipulated that whatever title Michael J. Gannon, Jr., and Joseph E. Gannon took under the will was conveyed by them and has passed by mesne conveyances to the defendant Gustave Pauk. Michael J., Jr., died in 1887, leaving children living at the time of his death, and Joseph E. died in 1893, also leaving children living at the time of his death. These children of Michael J., Jr., and Joseph E. are the plaintiffs in this suit.

The decision in the case will turn on the construction to be given to the clause in the will above quoted. The plaintiffs contend that the estate devised was what by the common law would be an estate tail, which, under our statute, is reduced to an estate for life in the first taker with the remainder in fee to the next in line. The

defendants contend that the estate devised to the two sons of the testator was a fee determinable as to each upon his dying without issue living at the time of his death; and as both died leaving issue, after having conveyed the land, the contingency on which the fee was to determine never occurred and the estate became absolute.

The trial court took the defendants' view of the case and entered judgment accordingly, from which judgment the plaintiffs appeal.

If the first sentence of this clause was all there was of it, there could be no question about it. In language more expressive of a purpose to give an absolute fee than necessary, the testator makes the devise in the first sentence and concludes it with a period. Whether by the use of the words, "and unto their heirs and assigns forever," the testator intended to emphasize a purpose to give an absolute fee, is a question that we can answer only after reading the whole clause, perhaps the whole will. The mere use of such words, unnecessarily, does not always indicate such a purpose. In fact it not unfrequently suggests a lack of knowledge of words necessary to express a given purpose; it often evinces a a lack of confidence of the writer in the force of the words previously used, and for that reason casts a doubt on their meaning. One who knows his own purpose and knows how to express it is less liable to multiply his words than one less informed. The consequence is that when we see words unskillfully used, especially technical words, we are less certain of the meaning intended than we would be if the words were used with skill. That is the reason that we are required, when we come to construe a will, to give less force to the forms of expression than we do in construing some other instruments, and to gather, if we can, in spite of the sometimes inappropriate use of technical words, the real purpose of the testator. The words, "I give and bequeath unto my two sons, Michael J. Gannon, Jr., and Joseph E.

Gannon, . . . my farm lying and being in the county of St. Louis," etc., were sufficient, if left alone, to carry a fee simple to the devisees. If that was the design of the testator, then the addition of the words "and unto their heirs and assigns forever" really gives no force to the preceding sentence and only suggests that the testator was not sure as to the meaning of the words already used or even of the words unnecessarily added.

Those words in this will are just as apt to an estate tail, if that was the intention, as they are to an estate in fee, if that was the intention. The word "heirs" expressed or implied is as essential to the creation of an estate tail as of an estate in fee simple, the only difference being that in the one particular heirs must be indicated while in the other general heirs is meant. Did the testator intend to give his sons an absolute fee, or a fee determinable upon the death of both without issue, or did he intend to create a fee tail?

It is not contended by the respondents that the testator intended to give an absolute fee, but the argument is that having granted an estate in fee and conferred with it the power of absolute disposal of the property, an absolute estate was thereby created and the attempted limitation over was void. The legal principle announced in that proposition is correct and the authorities cited by the learned counsel sustain it. "If, therefore, there be an absolute power of disposition given by the will to the first taker (as if an estate be devised to A in fee, and if he dies possessed of the property without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should leave, or without selling or devising the same); in all such cases the remainder over is void as a remainder, because of the preceding fee; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate, or power of disposition expressly given, or necessarily implied by the will." [4 Kent., Com.

(4 Ed.), p. 270; 2 Wash., R. P. (6 Ed.), 667; Yocum v. Siler, 160 Mo. 281; Roth v. Rauschenbusch, 173 Mo. 582.]

To apply that doctrine to this will, however, we would have to assume: First, that the estate devised to the first takers was an estate in fee simple, which is one of the main points in dispute; and, second, that the language of the will expressly or by necessary implication confers an absolute power of disposal of the property on the two sons. Passing for the present over the first point, let us see if the power of disposition is expressly or by implication conferred.

Taking the text just quoted wherein the rule is correctly stated, we see that the power of disposition referred to is not that which might be implied as an attribute of the estate granted, but in order to have the effect of cutting off the executory devise, it is a power given by the will in addition to the estate. A power of disposition is implied in every grant of a fee simple, yet the power so implied will not render void an otherwise valid executory devise, but when the fee is granted and, besides that, the power of disposition is added, then there can be no limitation over. There is no such added power in this will; the most that can be claimed for the language used in reference to that point is that it indicates that the testator understood that the power to sell was incident to the estate already granted, and he aimed to restrict that power. The language is, "It is my will that the same shall not be sold, at least, not before the younger of the two, that is, Joseph E. Gannon, becomes of age." There is, therefore, no such power of disposition given in addition to the estate given as would render void an attempted executory devise. If it is a determinable estate by the words of its own creation, it has not been made absolute by the words affecting the power of sale.

A determinable fee is defined to be, "An interest which may continue forever, but the estate is liable to

be determined without the aid of a conveyance, by some act or event, circumscribing its continuance or extent." [4 Kent (14 Ed.), p. 9.] It is an estate to continue until the event named occurs, then it is to cease.

In this case, according to respondents' theory, it was an estate in fee simple in the two sons of the testator, determinable on the death of both of them without issue then living, and since they both left issue living when they died, the event, on the occurrence of which the estate was to determine, became of impossible occurrence, and the estate became a fee simple absolute.

But to build their case on that theory respondents must assume that the two sons took an estate in fee simple in the first instance, because if they took only an estate in fee tail it would not be increased to a fee simple by the occurring of the event upon which it was to cease. In other words, if the will had said, *in totidem verbis*, "I devise to my two sons Michael and Joseph and to the heirs of their bodies respectively in fee tail forever" the land in question, "but if they both die without leaving issue living at the time of the death of the one last living then I will that the land go to my heirs," it would make no difference so far as concerns the interest that Michael and Joseph personally took whether they had issue or not; if they had no issue the executory devise would carry the fee to the heirs of the testator, and if they had issue the estate would go to their issue in fee tail, but in either event it would not affect a title derived by deed from the two sons.

There is nothing on the face of the will to suggest that the testator intended to say that the estate was to be a fee tail if his sons had children and a fee simple with a limitation over in the form of an executory devise if they had none.

If this will gave to the two sons a fee-simple estate determinable only on the death of both without issue, then since they both left issue living, their deed conveyed an absolute title, and the plaintiffs are not enti-

tled to recover, but if the will gave only an estate in tail, then by force of our statute, the sons took only a life estate, and it makes no difference whether we construe the contingency on which the executory devise depended to be a definite or an indefinite failure of issue, or whether the executory devise was valid or void, for in either event the land belongs to the plaintiffs. An executory devise may be created to take- effect as well on a condition that will terminate an estate tail as one that will terminate an estate in fee simple. The mere fact therefore that an executory devise is created to take effect on the happening of an event which would cause the preceding estate to determine, does not give character to that estate. We are now talking about an estate tail which appears in express words or by natural intendment in the instrument creating it and independent of the inference to be drawn from the limitation over in the nature of an executory devise.

In interpreting the statute- under which estates tail were created, the English courts were very technical in their reasoning and placed much value on the use of certain words. The words "heirs of his body" or their equivalent were deemed essential to the creation of an estate tail. In 2 Preston on Estates, p. 473, it is said: "The same rule which requires the limitations to be to the feoffee and his heirs, either by express words, or by words of direct and immediate reference, in order to the transfer of an estate in fee by deed at common law, also requires that, in order to the creation of an estate tail by deed, the gift shall, either by express words, or by words of direct and immediate reference, be to the donee and his heirs. So a gift to a man and his heirs, viz., heirs of his body, will, by reason of the qualification, be an estate tail. . . . The nature and qualities of estates tail admit of one case peculiar to these estates. An estate even in a deed may, contrary to the general rule of law, arise from neces-

sary implication. Thus, a gift to a man without any limitation to his heirs, but with a provision that the land shall revert to the donor, or remain to another, if the donee shall happen to die *without heirs of his body,* will afford ground for construction that the donee is to have the land to him and his *heirs of his body,* because the land is not to revert, or remain over, until there shall be a failure of these heirs. . . . The true reason is, that the intent of the donor appeared *in express words* in the deed; and the implication was a necessary one. . . . Words of reference in limitations of estates tail operate in the same way as words of reference in limitations of estates in fee. By the reference they have the effect of the very word to which the reference is made, and are precisely of the same import as these words.''

After quoting from a number of cases the author, p. 528, says: ''From all these cases it may be assumed as a general position, that though the word heirs stands general and uncorrected in one sentence, it may, by the clause of another sentence, which introduces an ulterior gift, be corrected and explained, if the word heirs generally in the first clause, is by the words of the second clause explained to mean heirs of the body.''

In the text quoted the law-writer has mentioned two kinds of cases in which estates tail may be created otherwise than *in totidem verbis,* one which he distinguishes as peculiar to the nature and qualities of estates tail, that is, where the grant is in words indicative of an estate either for life or in fee simple with no other words in direct reference either to enlarge or qualify their meaning, yet followed with a provision that the land revert or remain over if it should happen that the donee die without heirs of his body, in which case by implication the life estate is enlarged or the fee is cut down to a fee tail; the other, is where words in the first instance are used which if unexplained or unqualified by direct reference would indicate an intention to create

a fee simple, yet which before the donor finishes the subject are so explained or qualified as to show that he meant to use them in the sense that would create an estate tail, then an estate tail is directly created, which is not an estate in fee simple cut down by implication but an estate tail by force of its own creative words. A grant to A and his heirs forever, but if he should die without heirs of his body, then to B and his heirs forever, is an example of an estate tail by implication. But a grant to A and the heirs of his body forever is an estate tail by direct words, and equally so, even though more clumsily expressed, if it be to A and his heirs forever, to have and hold unto the said A and the aforesaid heirs of his body forever, or words equally significant of an intention from first to last to create an estate tail. When we have to deal with a case under the first class referred to, it is important to know if the deed refers to a definite or to an indefinite failure of issue, but when we have a case under the second class that is immaterial.

The above quotations are taken from what the law-writer said on the subject of estates tail created by deed, but as to such estates created by will he said, p. 534: "Let it be remembered, that in wills, that strictness of the law which, in regard to *deeds,* requires that the limitation shall be to the *heirs* by that word, and not by a circuitous expression (except in the cases of a gift in frank marriage, and of cases of direct and immediate reference), and that these heirs shall, in the case of limitations in tail, be distinguished by words of procreation, descriptive of the body from which the heirs are to issue, or the person by whom they are to be begotten, is relaxed. . . Though in construing wills, the words which in a deed would create an estate tail, will give a like estate, this rule does not apply when reversed; for words which *in a deed* pass an estate in fee, and again, words which *in a deed* give only an estate for life, may, in a will, pass an estate tail. Thus a feoff-

ment to a man and his heirs male, without any context, conveys an estate in fee. In this case the word male is rejected as surplusage. In a will the word *males* will be retained, and a devise in these words will pass an estate tail; for the law in favor of the intention of the testator will supply the words of the body. So if a feoffment be to a man and his heirs, and if he shall die without issue (giving no direction that the issue shall be of his body), then over, the feoffee will have an estate in fee. In a devise by these words, the devisee will have an estate tail."

Thus the law is, that when we are required to ascertain the character of a gift in view of the statute *de donis*, whether it be under a deed or a will, the main object is to discover the intention of the donor and adjudge the character of the gift by that intention; yet when it is a deed that we are dealing with we are under more restraint than when it is a will. Under a deed if the word "heirs" is used in the granting clause, it may be cut down to mean heirs of the body of the donee, provided the words of procreation are used in the context directly referring to the former word, as if it should say, "to him and his heirs, that is, heirs of his body," or if it should say, "to him and his heirs" and then in a sentence closely following and referring to the gift say, "to the aforesaid heirs of his body." But in case of a will words of direct reference are not necessary. If taking the whole instrument as expressing his intent we find that the testator really intended to limit the estate to his sons and their descendants in direct line, then we should say that the will creates what at common law would have been an estate tail.

Let us under the light of these rules of construction search for the testator's intention in this fourth clause of his will.

The words employed show that the testator was not sure that he knew what words were necessary to express his idea, and the technical words he did use were

not used with precision. The word "bequeath" was inappropriate, and the words "heirs and assigns forever" were at least unnecessary if the intention was to give an estate in fee simple. If the intention, however, was to limit an estate to the sons and the heirs of their bodies forever the word "heirs" was not unnecessarily used. Our statute which renders the word heirs unnecessary in the grant of an estate in fee under certain conditions, has no reference to estates tail; they are to be judged by the law as it came to us from England. The inappropriate or unnecessary use of those words, however, signifies nothing more than that the document was not written with technical precision; they do not tend to obscure the meaning, but they admonish us not to adhere too closely to the technical meaning of the words used. The testator did not intend to give his two sons an absolute fee in the property. This is shown by the fact that immediately following the words of grant are conditions and restrictions; first, the property is not to be sold until the younger comes of age, and, second, if either should die without issue, the other should have the estate. The purpose to create cross-remainders is thus shown. If the word "heirs" had not been used in the first sentence, there would perhaps have never risen a question but that the estate granted in that sentence was qualified by the grant of cross-remainders in the sentence next following. But as we have seen from the authorities quoted the word "heirs" in the first sentence is explained by the word "issue" in the sentence following and those words are to be taken together. The two sentences coming together and relating to the same subject show that when the testator used the word "heirs" in reference to his sons he meant their children, he used the words "heirs" and "issue" as synonymous and taken together they mean heirs of their bodies. That is the natural interpretation to put on his language and the interpretation that we are authorized by the law to put upon it. Inter-

preting the word "heirs" in the first sentence to mean heirs of the bodies of the testator's sons we have an estate tail and we render all parts of the clause in harmony.   He intended that if his two sons had children the estate should be limited to them, and their children to descend in that line, but if either of his two sons should die without leaving a child then living, the estate should pass to the other son and his heirs; and he used the word "heirs" in that connection in the same sense that he used it in the first sentence, that is, as meaning child or children, and his intention was that the estate should be kept in that line of descent.   The limitation to the surviving son was a good remainder and would have been good as such in a deed, because a remainder may be limited on an estate tail.   [2 Fearne on Rem., 192; 2 Washburn, R. P. (6 Ed.), 1539.]   But it would not have been good as a remainder if the first estate granted had been fee simple, because a remainder can not be limited after a fee.   The next expression of the testator's wish was that if both of his sons should die without issue, that is, if the estate he had (somewhat clumsily yet with sufficient precision to indicate his intention), created, should fail because of a failure of heirs of the bodies of his sons, then it should revert to his general heirs.   In the remainder to the one son on the death of the other the period at which it was to take effect was at the death of the other without issue then living.   This is so, not by any artificial rule of construction, but by the facts of the case itself.   The two brothers were both living and the remainder was to the one who should survive if the condition then existed. But if they should both die without issue then the estate should return to the heirs of the testator.

Respondents contend that this last limitation was an executory devise, that it was good only in the event the two sons had died without issue living at the time of the death of the one last dying, in which event it would have cut down the fee in the first takers and converted

it into an estate tail, but that since both the first takers left children living when they died the executory devise became void and the estate remained a fee simple.

We do not construe the will to be a devise of an estate in fee simple in the first instance and, therefore, we do not hold that the estate derives its character as an estate tail by being cut down by the limitation of the executory devise. We hold that by the use of the word "heirs" in connection with the word "issue" the testator intended to give the estate to his two sons and the heirs of their bodies and thereby created in the first instance what would have been at common law or by the statute *de donis* an estate tail.

But even if it be construed to have been an estate in fee simple in the first instance, we would feel constrained, by the weight of authorities and the former rulings of this court, to hold that by the clause declaring that in case of the death of both sons without leaving issue the estate was to revert to the heirs of the testator, the fee was cut down to a fee tail. [Farrar v. Christy's Admrs., 24 Mo. 467; Harbison v. Swan, 58 Mo. 147; Thompson v. Craig, 64 Mo. 312; Wood v. Kice, 103 Mo. 329.]

The doctrine laid down in the earlier of those cases and followed or approved in the later ones is that, where a devise to one in terms sufficient, if standing alone, to give an estate in fee simple is followed by a clause providing that if the devisee should die without issue the estate should revert to the heirs of the testator or go over to another as an executory devise, the estate to the first devisee is by implication cut down to an estate tail. But in Yocum v. Siler, 160 Mo. 281, this court, per GANTT, J., said (l. c. 296): "Yet when it is considered that this conclusion was only reached by holding that the words 'dying without issue' meant *an indefinite failure* of issue, and this postponed the vesting of an executory limitation so long that it violated the rule against perpetuities and was therefore void, as our stat-

ute of 1845 gave a different meaning to these words, and directed they should be construed as meaning *heirs or issue living at the time of the death of the ancestor named, no such implication* can longer be raised from their use in this State.''

What is there said is the main foundation for the position taken by respondents, and it does justify them in saying that by force of the statute of 1845 (now sec. 4593, R. S. 1899) under the case above stated the words dying without issue mean dying without issue living at the time of the death of the ancestor, and that if at the death of the ancestor there is issue living the executory devise is extinguished and the estate in fee in the first taker remains unimpaired.

The interpretation put upon the will in the case of Yocum v. Siler did not depend on the aid of that statute as there construed, for there was on the face of the will itself sufficient to show that the words, ''If my said son dies without legal issue,'' meant issue living at the time of the son's death. The limitation over in that case was not, as in the case at bar, to the indefinite heirs of the testator, but to individuals named who were then living, showing without resort to rules of construction, that the testator intended to say issue living at the time of his death. The writer of this opinion concurred in the opinion in that case and has no thought now to question the correctness of the conclusion reached, but after a second study of the subject he is of the opinion that the statute of 1845 did not apply to the facts of that case.

Estates tail never existed in this State. They were abolished by Act of the General Assembly of the Territory of Missouri in 1816. [Terr. Laws, 1815-16, p. 32.] And again by Act of the General Assembly of the State in 1825 it was enacted: ''That in cases where by the common law any person or persons would now be, or might hereafter become seized in fee tail,'' such person was to have a life estate only and the remainder

pass in fee simple to the one next in line. [R. S. 1825, p. 216.] That has continued to be substantially the statute law to the present time, the language of the present statute being: "Sec. 4592. In cases, where by the common or statute law of England, any person might become seized in fee tail of any lands," etc., he shall have only a life estate and the remainder in fee simple pass to the person next in line. The estates tail there disposed of were such as were then defined by the rules of the common law and the statute *de donis*, not such as might be affected by any other rules.

The statute treated only of estates that had the characteristics, which, by the common law or the statute *de donis*, appertained to estates tail, and it says in effect that whenever an estate shall be created having those characteristics it shall be a life estate to the first and a fee simple to the second.

That had been the law for more than twenty years when the act of 1845 was passed and its language in that particular has not changed. If we say the act of 1845 shall apply, then we may have a grant which under the common law or the statute of England would be an estate tail, yet we can not give to it the effect that the act of 1825 says it must have, we rob that act of its force.

We do not think the act of 1845 was intended to apply to such case. That act is now section 4593, Revised Statutes 1899, and is as follows:

"Where a remainder in lands or tenements, goods or chattels, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, or on failure of issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor."

That statute by its terms relates only to remainders; an executory devise is not a remainder. [4 Kent (14 Ed.), p. 270; 2 Washburn, R. P. (6 Ed.), secs. 1743-

4-5-6.]   It would be applicable in this case (if necessary to a construction) to the contingent remainder to the survivor of the testator's two sons, but not to the executory devise to his indefinite heirs.

That section was first inserted in our law in the revision of 1845.   That revision was not hastily prepared during a session of the General Assembly, and was not the work of laymen, but was the work of a commission of distinguished lawyers and jurists extending over a period of two years.   They did not use technical words loosely or without understanding; they did not mean an executory devise when they said remainder.

In Harbison v. Swan, 58 Mo. 147, the will was very similar in form to the will in the case at bar.   That case arose after the Statute of 1845 went into effect, yet the court construed the will under the act of 1825 without reference to that of 1845 and the opinion was rendered by Judge NAPTON who was one of the commission that made the revision of 1845.

We hold that under the fourth clause of the will of Michael J. Gannon such an estate in the land in suit was devised to Michael J. Gannon, Jr., and Joseph E. Gannon as would under the common law and the statute *de donis* have been an estate tail to them and the heirs of their bodies, which by force of our statute, section 4592, became a life estate in the two sons, Michael J., Jr., and Joseph E., with the remainder in fee to their children, the plaintiffs in this case.

The judgment is, therefore, reversed, and the cause remanded to be retried according to the law as herein expressed.

All concur.