JAMES H. SUYDAM, PLAINTIFF IN ERROR, *v.* WILLIAM H. WILLIAMSON.

Subsequently to the decisions of this court in the cases of Williamson *v.* Berry, Williamson *v.* the Irish Presbyterian Church, and Williamson *v.* Ball, reported in 8 Howard, the Court of Appeals of the State of New York affirmed a different opinion from that of this court respecting the title to the real property involved in those decisions.

This court now adopts the decision of the court of New York in conformity with the rule which has uniformly governed this court, that where any principle of law establishing a rule of real property has been settled in the State courts, the same rule will be applied by this court that would be applied by the State tribunals.

Cases cited in support of this rule, and the cases in 8 Howard commented on.

THIS case was brought up writ of error from the Circuit Court of the United States for the southern district of New York.

The facts of the case are stated in the opinion of the court, and also in the report of the cases in 8 Howard.

It was submitted on printed argument by *Mr. Ellingwood* for the plaintiff in error, and argued by *Mr. David Dudley Field* for the defendant.

The points of law involved in the case are fully stated in the reports in 8 Howard, and it is unnecessary to repeat them in the arguments of counsel now. And, moreover, the decision of this court turned upon another point, which is fully explained in the opinion.

Mr. Justice CAMPBELL delivered the opinion of the court.

This was an action of ejectment in the Circuit Court for certain lots of land in the city of New York, by the defendants in error, against the plaintiff in error. The plaintiff in the Circuit Court claimed, under a devise in the will of Mary Clarke, who died in the year 1802, by which she gave to trustees therein named that part of the farm upon which she resided, and which she owned, called Chelsea, in trust, to receive the rents, issues, and profits thereof, and to pay the same to Thomas B. Clarke, during his natural life; and from and after the death of said Thomas B. Clarke, in further trust to convey the same to the lawful issue of the said Thomas B. Clarke, living at his death, in fee The property in dispute is a portion of this estate. Thomas B. Clarke died in 1826, and the plaintiffs have the title to this property of his three children, who were living at his death.

The defendant's title is deduced from Thomas B. Clarke, who disposed of the property under the authority of certain acts of the Legislature of the State of New York, and orders of the court of chancery of that State.

In March, 1814, T. B. Clarke represented to the Legislature the existence and terms of the will of Mary Clarke, and that the trustees named in the will were consenting to such acts of the Legislature of the State as it might deem proper to pass for his relief, and also requested, with their sanction, that another trustee might be substituted in their stead; and further represented, that the estate could not be so improved and made productive as to fulfil the object of the testator; that he had married and had a family of five children, and that some other disposition of the estate was essential for the support of his family and himself. The Legislature thereupon passed an act for the discharge of the trustees named in the will, and empowered the court of chancery to appoint one or more trustees to execute and perform the trusts and duties specified in the will and in their act. The act authorized the subdivision of a specified portion of the farm into city lots, and their sale within a convenient time thereafter, with the assent of said

Clarke, and for the investment and application of the income of the proceeds of the sales.

In March, 1815, upon the petition of Thomas B. Clarke, representing that he could not procure a suitable person to execute the trusts of the act of 1814, and that no other person was interested in the property beside his family and himself, an act was passed authorizing Clarke to become trustee, in like manner and with like effect that trustees duly appointed under the said act might have done, and that the said Clarke might apply the whole of the interest and income of the said property to the maintenance and support of his family, and the education of his children ; and that no sale should be made until the said Clarke should have procured the assent of the chancellor of the State to such sale, who shall, at the time of his giving such assent, direct the mode in which the proceeds of sale, or so much thereof as he shall think proper, shall be vested in the said Thomas B. Clarke, as trustee ; and further, that it shall be the duty of the said Clarke to render an account annually, to the chancellor, of the principal, the interest being applicable as the said Clarke might think proper, for his own use and benefit, and the maintenance and support of his children.

After the passing of this act, the chancellor, upon the petition of Clarke, made sundry orders for the sale of the lots and the appropriation of the proceeds of sale, under the directions of a master of the court. In one of these orders the chancellor directed that so much of the net proceeds to arise from the sales be applied, under the direction of one of the masters of the court, for the payment and discharge of the debts now owing by the petitioner, and to be contracted for the necessary purposes of his family.

In March, 1816, the Legislature of New York further enacted, that the said Clarke, under the order heretofore granted by the chancellor, or under any subsequent order, might mortgage or sell the premises which the chancellor permitted or might permit him to sell as trustee under the will of Mary Clarke, and to apply the money so raised by mortgage or sale to the

purposes required or to be required by the chancellor, under the acts theretofore passed for his relief.

In March, 1817, the chancellor authorized Clarke to sell the southern half of the property included in the devise, and to convey any part or parts of the said estate in payment and satisfaction of any debt due and owing from the said Clarke, upon a valuation to be agreed on between him and his respective creditors: provided, nevertheless, that every sale and mortgage, and conveyance in satisfaction, that may be made by the said Thomas Clarke, shall be approved by one of the masters of the court, and that a certificate of approval be endorsed upon every deed or mortgage to be made in the premises; and that the said Clarke be authorized to receive and take the moneys arising from the premises, and apply the same to the payment of his debts, and invest the surplus in such manner as he may deem proper, to yield an income for the maintenance and support of his family.

In October, 1818, Thomas B. Clarke executed a deed to Peter McIntyre for a number of lots, including those described in the declaration, in which he recited that he had been empowered to sell, or mortgage, or convey, in satisfaction of any debt due from him to any person, the property devised by Mary Clarke, as aforesaid; and that Clarke was indebted to McIntyre in a large sum of money; and that in consideration of the premises, and of thirty-seven hundred and fifty dollars, the receipt of which he acknowledged, he granted, &c., &c.. in fee simple to McIntyre.

The master in chancery endorsed upon the deed an approval, that "having examined the within deed, he approved it in manner and form," and contemporaneously conveyed to McIntyre an interest he held as trustee for Clarke.

Upon the trial, it appeared that the sale was made upon the consideration of some debts of Clarke, that McIntyre assumed to pay; of occasional advances of small sums of money to Clarke, and payment of bills, in which the children were interested; of some two or three years of board of Clarke and a portion of his children, and two notes for about fifteen or sixteen hundred dollars. It was shown that others of the chil

dren were neglected by Clarke, and subsisted through the bounty of friends and relatives.

The defendant connects himself with the title of McIntyre as a purchaser at a sale of the property under a decree of foreclosure of his mortgage, in 1844, by the court of chancery in New York.

The plaintiffs impugn the proceeding under which the conveyance to McIntyre was made, and the sufficiency of the consideration to support the conveyance. They contend that every material question in this case is *res judicata* in this court, having been adjudged in the cases of Williamson *v.* Berry, 8 How., 495, 549, Williams *v.* the Irish Presbyterian Church, 8 How., 565, and Williamson *v.* Ball, 8 How., 566. They insist that it is not material whether the Court of Appeals of New York persist in their adherence to the decision in the case of Cochran *v.* Van Surley, 20 Wend., 365. If they are not willing to re-examine the grounds of that decision, that is not a reason why this court should recede. The decision here was made, after great deliberation, with the decision in Cochran *v.* Van Surley before it. Property has since been bought and sold upon the faith of the opinion here delivered, and the judgment by this court pronounced. Every principle by which our law of precedents is justified, tends against the re-opening of the case in this court.

The litigation in respect to the property conveyed by Clarke, under the authority derived from the acts of the Legislature, and the orders of the chancellor, commenced before the death of Clarke. Sinclair *v.* Jackson, 8 Cow., 543.

The case of Clarke *v.* Van Surley was tried at the New York Circuit in 1833, and was decided in the Supreme Court in 1836. 15 Wend., 436. It was removed to the court for the correction of errors, and was affirmed in that court, but with much division in the court, in 1838. Cochran *v.* Van Surley, 20 Wend., 365.

The decree of foreclosure and sale, under which the defendant claims, was rendered in 1840, and the sale took place in 1844. The purchaser, subsequently to the sale, objected to complying with his purchase, because of a notice from the

devisees of Mary Clarke, that they were claimants of the property, and forbade his entering upon the same. The vice chancellor, upon the motion requiring the purchaser to comply, and the chancellor, upon appeal from his order, compelled the purchaser to complete his purchase. The reasons for this order do not appear. But the vice chancellor and chancellor might have said, that it had become the settled law of the State that such a title was valid, and could have rested upon the authority of the case of Clarke *v.* Van Surley.

In 1851 the case of Towle *v.* Farley came before the superior court of the city of New York, and involved the title to one of the lots conveyed to McIntyre by Clarke, and sold under the decree of foreclosure. That case was determined in that court, and its judgment affirming the validity of that title was sanctioned in the Court of Appeals subsequently to the decisions reported in the 8th Howard, in this court. The Court of Appeals, in answer to the argument derived from the adjudication in this court, say, that perhaps there may be a difference between the cases which were determined in this court in 1851 and that case, but that the more suitable answer is, that as between the judgments of their own courts, and those of the courts of the United States, their own are binding where there is a conflict between them, except in cases arising under the Constitution and laws of the United States, when the judgments of the Supreme Court of the United States are of controlling authority. That court declares that the judgment in Clarke *v.* Van Surley is a determination of the court of last resort in this State, not only upon all the questions of law in the case under consideration, but upon the identical title under which the plaintiff in the reported case, and the defendant in the present case, claimed to own the premises in controversy in the respective suits. * * * In such a case, there being no pretence of collusion, and no reason to impute carelessness or inattention to the judges, the determination should be considered final and conclusive upon all persons in interest, or who may become interested in the question, as well as upon the parties to the particular action. Towle *v.* Farley, 14 N. Y. R., 426; S. C., 4 Duer, 164; Clarke *v.* Davenport, 1 Bosw

R., 96. S. C. affirmed on appeal; and the question is now presented to this court, whether they should adhere to their own opinion as expressed in the cases in 8th Howard, or acknowledge the authority of the courts of New York to settle finally the contest upon this title.

The subject of the dispute is real property situated within the State of New York, and her laws exclusively govern in respect to the rights of the parties, the modes of the transfer, and the solemnities which should accompany them. *Communis et recta sententia est, in rebus immobilibus servadum esse jus loci in quo bona sunt sita.* Every sovereign has the exclusive right to command within his territory; and the laws which originate rights to real property are commands addressed to the members of the State, requiring them to abstain from any interference with the proprietary right they recognise or establish; and in respect to this subject the sovereignty of New York has not been impaired by her adoption of the Federal Constitution. The power to establish federal courts, and to endow them with a jurisdiction to determine controversies between certain parties, affords no pretext for abrogating any established law of property, or for removing any obligation of her citizens to submit to the rule of the local sovereign. The title of the devisees of Mary Clarke was divested by authority conferred by the Legislature of the State, which was exercised subject to the oversight of her own tribunals. The persons affected by this authority were natives of the State—children under the superintending care of the parental jurisdiction of the State. It was in the constitutional exercise of this supreme and exclusive jurisdiction that this title was disturbed. It behooves every other State to enforce or maintain rights which have thus originated in laws operating within their legitimate sphere, and which defeat no policy of their own; and the jurisprudence of this court attests the care with which this court has observed the general obligation, (of which this is a particular instance,) in its administration throughout the Union.

In Jackson *v.* Chew, 12 Wheat., 162, this court say:

" The inquiry is very much narrowed by applying the rule which has uniformly governed this court, that where any prin-

ciple of law establishing a rule of real property has been set-
tled in the State courts, the same rule will be applied by this
court that would be applied by the State tribunals."

In Beauregard *v.* New Orleans, 18 How., 497, the court
say:

"The judgments of the Supreme Court of Louisiana, upon
the validity of the sales impugned in this bill, were given more
than twenty years ago. They have formed the foundation
upon which the expectations and conduct of the inhabitants
of that State have been regulated. They have quieted appre-
hension and doubt respecting à title to an important portion
of a large and growing city. They have invited a multitude
of transactions and engagements in which the well-being of
hundreds, perhaps thousands, of the citizens of that State de-
pend. In this bill there are several hundred of defendants.
The constitution of this court requires it to follow the laws of
the several States wherever they properly apply; and the
habit of the court has been to defer to the decisions of their
judicial tribunals upon questions arising out of the common
law of the State, especially when applied to the title to lands.
Upon cases like the present, the relation of the courts of the
United States to a State is the same as that of her own tri-
bunals. They administer the laws of the State, and to fulfil
that duty they must find them as they exist in the habits of
the people, and in the exposition of their constituted author-
ities. Without this, the peculiar organization of the judicial
tribunals of the States and the Union would be productive of
the greatest mischief and confusion."

In the case of Arguello *v.* United States, 18 How., 539, this
court determined that the colonization regulations of Mexico,
of 1824 and 1828, did not prohibit the settlement of the littoral
or coast leagues by natives, under the authority of the Gov-
ernor of California, and without the consent of the Central
Government in Mexico. The same question was presented in
the case of League *v.* Smith, at this term, from the District
Court of the United States in Texas, in reference to the coast
leagues in that State. This court found a contrary opinion
had prevailed in the courts of that State, and had become a

rule of property there, and without re-examining their own opinion, or making any attempt to account for or to reconcile the difference, without any hesitation applied the rule adopted in Texas to the determination of controversies existing there.

The cases reported in the 8th Howard, referred to, came before this court upon a division of opinion between the experienced judges of the Circuit Court of the southern district of New York. The authority of Clarke v. Van Surley was thus impugned in that tribunal. The decision in the court of errors was far from being unanimous; nor was the dissent in that tribunal feeble or equivocal.

The majority of this court were convinced that the questions might be examined anew, and their answers were accordant with the opinion of the minority in the court of errors. But in the present case there is no room for doubt as to what the settled opinion of the courts of New York is in reference to this title, and therefore no occasion for any hesitation concerning the obligation we have to perform. The Circuit Court decided adversely to the defendant. Its judgment is reversed, and the cause remanded for further proceedings.