## DAVIS *v.* CROUCH.

This court has no jurisdiction to re-examine the decree of the highest court of a State, reversing that of an inferior court, and remanding the cause for further proceedings.

ERROR to the Supreme Court of Appeals of the State of Virginia.

Hector Davis died during the late civil war, at Richmond, Va., leaving a will executed March 21, 1859, as follows:—

"RICHMOND, March 21, 1859.

"I, Hector Davis, of city of Richmond, State of Virginia, do hereby make this my last will and testament: Item 1st, I give to my nieces, Jannie, Sally, and Bettie Davis, the sum of $15,000, to be equally divided between them. I give to a servant-woman, Ann, of mine, her freedom, to be removed out of the State, with her four children, Jannie, Audubon, and Victoria, and after their removal the sum of $20,000, she, Ann, to have the interest on one-fifth of the amount, and the interest of the balance to be expended in raising the said children till they become of age; then the principal to be given them. I wish said amount to be invested in State stock by my executors, and applied as aforesaid.

"I give my nephew, R. D. James, of Goochland, the sum of $5,000. Whatever balance I may be worth, I want given to my sister, Ann Crouch, and her children. I appoint R. D. James and Franklin Matthews my executors to this my last will and testament.

"As witness my hand and seal.

"HECTOR DAVIS.

"Witnesses: B. W. ELMORE.
           S. N. DAVIS."

This will was admitted to probate in the Circuit Court of the city of Richmond, March 13, 1863, when James alone qualified as executor. The servant-woman Ann and her children are the present plaintiffs in error, and are known in the pleadings as Ann Davis, Jannie Davis, Audubon Davis, Victoria Davis, and Matilda Davis. They were removed at some time to Philadelphia, but whether before or after the death of the testator,

does not appear, though they seem to have been there during the war.

The estate was large, consisting of real property, slaves, bank and other stocks, a small amount of Confederate bonds, debts due the testator, and some furniture. All the parties interested in the settlement of the estate resided in the Confederate States during the war, except Ann Davis and her children.

The personal property, exclusive of debts due the estate, was valued at $91,020. Feb. 20, 1864, leave was granted the executor by that court, upon his petition therefor, to invest the cash on hand belonging to the estate in interest-bearing bonds or certificates of the Confederate States, or of the State of Virginia, or any other sufficient bonds or securities in that State. Under this order he invested, during the months of April, July, and November of that year, $33,508.82 of Confederate currency in Confederate bonds. A part of the slaves were sold, but nearly all the remainder of the personal and real property, except the debts, was retained during the war in the condition it was left by the testator at his death.

At the close of the war, proceedings were instituted in the Chancery or Circuit Court of the city of Richmond against the executor by the residuary legatees, looking toward a settlement of the estate; and, Nov. 9, 1865, the executor filed in that court a bill in chancery against all the legatees, including Ann Davis and her children, to have the whole estate settled up and distributed among the parties entitled thereto. In these proceedings the executor was ordered to render an account of his transactions before one of the commissioners of the court, who was directed to take an account of all the assets belonging to the estate, and of all claims due by the same. A report was filed by the commissioner, Feb. 16, 1868, to which exceptions were taken both by the executor and the residuary legatees; and, May 19, 1869, the report was recommitted to the commissioner, with the exceptions, for further examination, and a restatement of the accounts, if necessary. Nov. 16, 1869, Ann Davis and her children appeared, and, by leave of the court, filed an answer to the bill of the executor, in which they claimed their full rights, and particularly objected to the

investments in Confederate bonds, as unauthorized and illegal, so far as they were concerned. A second report was filed by the commissioner, May 4, 1870, from which, with that of 1868, it appeared that the debts owing by the estate amounted to about $23,000 ; that there was in the hands of the executor United States currency to the amount of $14,188.54 ; that the estimated value of the real estate was $15,435 ; that the estimated value of Virginia State stock and furniture was $1,524 ; and that there were also in the hands of the executor debts due the estate, marked " good " or " doubtful," of the nominal amount of $40,000 and more. In stating the account, the executor was allowed a credit for his investments in Confederate bonds. Many exceptions were filed to the report by the residuary legatees, and, among others, because the executor was credited with the amount of these investments, and because he had not been "charged with every debt reported by him ' good ' and every debt reported by him ' doubtful,' unless he had obtained judgments upon them, because it was his duty to have obtained judgments against all who did not pay and were not deemed insolvent."

At the hearing in the Circuit Court both these exceptions were overruled, and a decree entered confirming the report, with some modifications. From this decree Ann Davis and the residuary legatees took an appeal to the Supreme Court of Appeals of the State, where the following judgment was entered April 22, 1873 : —

" This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said Chancery Court erred in overruling the appellant's fifteenth exception to the report of Commissioner Evans; instead of doing which, the said court ought to have recommitted the said report, as to the matter of the exception, to a commissioner of the court, with instructions to make further inquiry, and report as to the debts of the estate of Hector Davis at the time of his death, by persons residing in the State ; whether any of said debts, and which of them reported as worthless or doubtful, are now available, or might have been collected or secured by lien upon real estate or other-

wise, or by suits instituted since the death of the testator, and as to any other matters connected with said debts which the said commissioner might deem material, or concerning which either of the parties might require him to make inquiry and report; but the court is further of opinion that there is no other error in the said decree than as aforesaid. Therefore, it is decreed and ordered that so much of the said decree as is above declared to be erroneous be reversed and annulled, and the residue thereof affirmed; and that the appellee, R. D. James, pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And it is ordered that this cause be remanded to the said Chancery Court for further proceedings to be had therein, in conformity with the foregoing opinion and decree, which is ordered to be certified to the said Chancery Court of the city of Richmond."

This judgment has been brought here by Ann Davis and her children upon a writ of error, and the executor now moves to dismiss the writ, because the judgment of the Court of Appeals is not the final judgment or decree in the suit.

*Mr. J. Randolph Tucker* for the plaintiffs in error.
*Mr. Conway Robinson, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

Our jurisdiction upon writs of error to State courts is confined to the final judgment or decree in a suit in the highest court in which a decision in the suit can be had. Rev. Stat. 709. This, we think, is not such a judgment. It decides some of the questions involved in the controversy between the parties, but the suit itself has been sent back to the Circuit Court for further proceedings, in conformity to the opinion filed with the record. In short, the judgment is one of reversal only, which, as we have uniformly held, is not a final judgment in the suit. *McComb* v. *Commissioners*, 91 U. S. 1; *Parcels* v. *Johnson*, 20 Wall. 654; *Tracy* v. *Holcomb*, 24 How. 427. After the further proceedings which have been ordered in the Circuit Court, the suit may be again taken to the Court of Appeals, and another judgment rendered there.

The object of the parties is to settle and distribute the estate of the testator under the direction of the court. The plaintiffs

in error are only interested in securing the payment of their legacy. A statement of the accounts of the executor, upon the principles settled by the Court of Appeals, may produce a fund sufficient to satisfy them. The only question upon which our jurisdiction can be invoked arises out of the decision as to the liability of the executor to account for his investments in Confederate securities. As to this, the present plaintiffs in error, having been non-residents of the Confederate territory during the war, occupy a different position from the other parties; and, until the suit has been finally disposed of in the State courts, the fund ascertained, and the results of a decree ordering distribution known, we cannot tell whether they will be injuriously affected by the errors now complained of. They cannot bring the case here for the benefit of the other parties interested in the estate, except so far as the relief granted to them may indirectly operate to the advantage of the others. If in the end, upon the distribution of the estate under the principles of accounting as now established, they shall not be able to obtain payment of the amount due them, the case may be again taken to the Court of Appeals upon the future decree of the Circuit Court, and from there here, if necessary. Whether their interest in the convertible value of the Confederate currency invested in Confederate bonds for the purchase of State stock is sufficient to justify them in doing so, will be a matter for them to determine, after the final decree shall have been rendered.

In the present condition of the suit, however, we are compelled to dismiss the writ for want of jurisdiction.

*Writ dismissed.*