BROWN *et al.*, *Appellants*, v. ROGERS *et al.*\*

Division One, December 10, 1894.

1. **Will**: ESTATE TAIL: STATUTE.  A devise to several of testator's daughters "and the heirs of her body," and that, should any of said heirs die without issue, her share should be divided between the testator's then surviving daughters, is void as being in contravention of the statute of this state abolishing estates tail. (R. S. 1845, p. 219, sec. 5.)

2. ———: ———: ———: PARTITION: LIMITATION.  In such case, after the death of each devisee without bodily heirs, the land devised to her vested in and became subject to partition among her general heirs.

*Appeal from Jackson Circuit Court.*—C. O. TICHENOR, *Esq.*, Special Judge.

AFFIRMED.

*H. C. McDougal* and *C. F. Moulton* for appellants.

(1)   In the construction of wills, the intention of the testator, ascertained from the language employed, is the controlling guide of courts. *Redman v. Barges*, 118 Mo. 568; *Shumate v. Bailey*, 110 Mo. 415.   The rule governing the construction of common law conveyances is not applicable to the construction of executory devises. *Inglis v. Harber*, 3 Pet. (U. S.) 117. (2) In the devises to his six daughters, Jacob Johnson

---

\*The case of Buford v. Kronehart was, on the same date, affirmed on the authority of this case.

parted with his entire interest in the estate conveyed. *Green v. Sutton*, 50 Mo. 192; *Lessee v. Thompson*, 6 Ohio St. 480; *Wilkins v. Smith*, 7 T. R. 555; *Ewing v. Shannahan*, 113 Mo. 193; *McCudack v. Holmes*, 111 Mo. 445. After a conveyance of the fee, remainders could not exist. *Chew v. Keller*, 100 Mo. 368. (3) In executory devises, when the fee passes on the death of the testator to the devisees, the fee so aliened is termed a qualified, base, determinable, or conditional fee, awaiting the happening of the contingency. *Jackson v. Waldrom*, 13 Wend. 192; *Patterson v. Ellis*, 11 Wend. 277. (4) An executory devise was created by this will. 4 Kent. [9 Ed.], 308; *Moffat v. Strong*, 10 John. 16; *Cutter v. Daughty*, 23 Wend. 513; *Wilkins v. Lyon*, 2 Cow. R. 333; *Patterson v. Ellis*, 11 Wend. 280, 292; *Roe v. Jeffry*, 7 T. R. 589; *Jackson v. Anderson*, 16 John. 382; *Naylor v. Godman*, 109 Mo. 543; *Pells v. Brown*, Cro. Jac. 590; *Fordick v. Cornell*, 1 John. 440; *Barnitz v. Casey*, 7 Cranch, 456; *Abbott v. Essex Co.*, 18 How. (U. S.) 212, are only a few of the authorities on this branch of the law. (5) An executory devise can not be aliened nor destroyed by any legal form during the period of its fixed existence. *Moffat v. Strong*, 10 John. 17; *Jackson v. Bull*, 10 John. 21; *Myer v. Craig*, 1 Bus. L. 169; Fearne on Executory Devises by Powell, 56; 4 Kent [9 Ed.], side p. 266; *Allen v. White*, 16 Ala. 181; Sanders on Uses and Trusts, 204; *Southerland v. Cox*, 3 Dev. 394; *Edwards v. Varrick*, 5 Denio. 664; Fearne on Remainder, 459; 2 Preston on Abstract, 119; and this though all mankind had joined in the conveyance. 4 Kent [9 Ed.], side p. 266. (6) The devise to Clarinda Johnson did not lapse under the term of the will, though her death preceded that of her father. *Faust v. Birna*, 30 Mo. 414; *Martin v. Lachasse*, 47 Mo. 593; *Norris v. Begea*, 13 N. Y. 273; *Eaton v. Starn*, 18 N. H. 320; *Goddard v. Goddard*, 18 Pa. St.

(7) On the question of the transmissibility of the executory devise, where the devisee dies, before the happening of contingency, upon which the devise is limited, we cite: *Barnitz v. Casey*, 7 Cranch. 456; Cas. Temp. Talb. 117; *Goodright v. Searle*, 2 Wils. 29; Fearne on Remainders, 459. (8) It is essential that the plaintiff have title to an undivided interest in the land which he seeks to have partitioned. Freeman on Cotenancy and Part., sec. 432; *Arnett v. Bailey*, 60 Ala. 439; *Belvew v. Jones*, 56 Miss. 342; *Soulten v. Alward*, 34 Me. 153; *Russell v. Bearly*, 72 Ala. 196; *Forder v. Davis*, 38 Mo. 115. (9) There should have been service of process on appellants in person in the partition proceedings, who at that time were minors. Sec. 8, Wag. Stat. p. 1004; *Smith v. Davis*, 27 Mo. 298; *Shaw v. Gregoire*, 41 Mo. 412; *Railroad v. Nelson*, 62 Mo. 588.

*Gates & Wallace* for respondents.

. (1) The estate devised to each of the daughters of Jacob Johnson was at common law an estate tail. The first illustration of an estate tail given by the text-books and law dictionaries is "a conveyance or devise to a person and the heirs of his body." 1 Washburn, Real Property [5 Ed.], book 1, chap. 4, pp. 98 to 105 and 108; Tiedeman, Real Property, chap. 4, sec. 47; Black's Law Dictionary, p. 435; Rapalje's Law Dictionary, p. 462. So defined by this court. *Wood v. Kice*, 103 Mo. 329, 333; *Emerson v. Hughes*, 110 Mo. 627, pp. 630, 631; *Godman v. Simmons*, 113 Mo. 122, 127; *Chiles v. Bartleson*, 21 Mo. 344; *Phillips v. La Forge*, 89 Mo. 72; *Reed v. Lane*, 26 S. W. Rep. 957. (2) After the statute *De Donis* an estate tail could be limited, in remainder after an estate tail. Tiedeman, Real Prop., ch. 12, sec. 398, and authorities

there cited; also ch. 11, sec. 385; Washburn, Real Prop. [5 Ed.], book 2, ch. 4, pp. 585 to 593, and ch. 7, sec. 1, p. 747. (3) This is what the testator intended and attempted to do. If the intention of · the testator was contrary to the rules of law, then the law must prevail. *Farrar v. Christy*, 24 Mo. 453, 471; *Harbison v. Swan*, 58 Mo. 147, 152, 154. (4) The life estate of the daughter, Clarinda, having determined at her death, January 25, 1851, the fee simple title as to the lands in section 34, was vested at that date in her five sisters and her brother, Gordon. All these were parties to the partition suit of 1857. The land was sold under these proceedings, and thus the entire estate passed from the heirs of Jacob Johnson. Plaintiffs never had or acquired under Jacob Johnson's will, any title or interest in these lands. R. S. 1855, p. 1116, sec. 35; *Owsley v. Smith*, 14 Mo. 153; *Forder v. Davis*, 38 Mo. 108; *Holladay v. Langford*, 87 Mo. 577; *Bobb v. Graham*, 89 Mo. 200; *Hart v. Steedman*, 98 Mo. 452; *Akers v. Hobbs*, 105 Mo. 127, 133; *Beckner v. McLinn*, 107 Mo. 289.

MACFARLANE, J.—This is a suit in ejectment to recover possession of the following. lands, viz.: The west half of the southwest quarter of section 34, and the southeast quarter of the southeast quarter of section 33, all in township 50, range 32, in Jackson county. The suit was commenced September 22, 1890.

It was agreed that Jacob Johnson was the common source of title. He died testate in 1851, leaving one Gordon P. Johnson and six daughters, Clarinda, Catherine, wife of Daniel C. Woodall, Eliza, wife of Abraham Buford, Amanda, wife of ——— Castleman, Mary Jane, afterwards wife of Richard Kirby, and Julia, afterwards wife of James McCormick. By his will, under separate paragraphs, he devised to each of

his children certain described land. The devise to his son was in fee, but to each of his said daughters it was to her "and the heirs of her body." The said southeast quarter of the southeast quarter was by the seventh paragraph devised to his daughter "Mary Jane and the heirs of her body," and the said west half of the southwest quarter was by the eighth paragraph devised to his daughter Clarinda, "and the heirs of her body."

The final paragraph of the will was as follows: "Finally, it is my will and desire, that should any of my heirs above named die without issue of their body, that the property bequeathed to such heirs shall be equally divided between my then surviving heirs, the same to vest absolutely in them and the heirs of their body; except my son Gordon P. Johnson, who, it is my will, shall take his share absolutely himself."

The son Gordon P. died without issue, June 29, 1863. Clarinda died, without issue, on the day of her father's death. Eliza Buford died November 11, 1860, leaving four children, viz.: William, born February 19, 1851; John, born June 20, 1853; Rowena (now wife of James F. Brown), born June 5, 1855; Elizabeth (now wife of John C. Blakely), born March 11, 1858, who are the plaintiffs in this action. Julia Ann, who intermarried with James McCormick, died February 14, 1864, leaving two children then living, viz.: Gertrude, who died in infancy, prior to 1871, and the other, viz.: Wm. W. McCormick, died single and unmarried on the twenty-first day of November, 1888. Amanda Castleman, who afterwards married Anderson, died April 11, 1867, without issue. Mary Jane Kirby died September 30, 1870, without issue. Catherine Woodall died May 20, 1889, without issue.

Both parties to the suit claim title through the will. Plaintiffs are the sole surviving grandchildren of the

testator.   Defendants claim as purchasers under judg-
ments and orders of sale in partition, made after the
death of the said Clarinda and Mary Jane, and by
virtue of adverse possession.   All the surviving heirs
of the said Clarinda and Mary Jane, including the
plaintiffs, who are the children of Eliza Buford,
deceased, were made parties to these partition suits.
Objection is made to the manner in which plaintiffs,
who were then minors, were made parties to some of
these suits, but the proceedings are conceded to have
been sufficient to give the purchasers color of title, and
the adverse possession of the defendants, and their
grantors, has been sufficient to give them the absolute
title of the interest of plaintiffs, if the land was at the
time subject to partition.

The question here is what estate passed under the
will and to whom.   Plaintiffs claim that, reading
the separate, special paragraphs of the will, in connec-
tion with the final one, an executory devise was created,
under which the entire estate finally passed to them as
the sole surviving children of the devisees of the tes-
tator and a partition of the land, being in contraven-
tion of the will, could not be made.

As we do not think the will created an executory
devise, it will be unnecessary to determine whether the
land would have been subject to partition had one been
created.

There can be no doubt that each separate para-
graph of the will which makes devises to the daughters
of the testator, created what would have been, under
the English statutes of entails, an estate in fee tail.
The exact words necessary to create such an estate
were used.   If there had been no other provision of
the will, the statute of this state concerning entails, in
in force at the death of the testator, would have imme-
diately converted the estate tail into one for life only

in the devisee, with remainder in fee to her children, and in the event of such devisee dying without issue the remainder would have passed to, and been vested in, the heirs of such devisees. R. S. 1845, sec. 5, p. 219. This statute has been so construed in *Clarkson v. Clarkson, ante,* p. 381.

There can be no doubt that the testator, by the final paragraph of the will intended, in case of a failure of issue to any of the devisees, to have the estate pass to the other devisees and the heirs of their bodies, having in view the purpose of finally vesting the entire estate in his grandchildren. The intention of the testator is very clear.

It is true that the controlling guide in the construction of wills is to ascertain the intent of the testator. In order to arrive at the intention the entire instrument and all its parts must be read together, and, if possible, effect must be given to every clause. But the intention of the testator must give way if clearly inconsistent with the rules of law.

Our institutions are opposed to primogeniture in any form. The system has been broken up by express legislation in probably all the states of the union which have adopted the English common law. In some of them estates tail have been abolished altogether. In others the legal effect of such common law grants and devises has been declared. Under the statutes of some of the latter class the tenant in tail takes a fee simple absolute. The same object of destroying entails is accomplished under our statute, and those of some others of the states, by means less radical than that adopted by others, but equally effective.

The statute of 1845, which was in force at the death of the testator, which occurred in 1851, declares:

"That from and after the passage of this act, where any conveyance or devise shall be made, whereby

the grantee or devisee shall become seized in law or equity, of such estate, in any lands or tenements, as under the statute of the thirteenth of Edward the First, (called the statute of entails) would have been held an estate in fee tail, every such conveyance or devise shall vest an estate for life only in such grantee or devisee, who shall possess and have the same power over, and right in, such premises, and no other, as a tenant for life thereof would have by law, and upon the death of such grantee or devisee, the said lands and tenements shall go and be vested in the children of such grantee or devisee, * * * and if there be no issue, then to his or her heirs."

Under this statute where the attempt is made to create an estate tail, the estate is immediately converted to one created by the statute under which the entire estate passes to the grantee or devisee for life with remainder in fee simple to his or her heirs.

The attempt of the testator by the final paragraph of the will to follow up the estate tail, first created, with a succession of others limited upon cross remainders, with a view that ultimately his entire estate should vest in his grandchildren, is in direct contravention of the clearly expressed intention of the statute. The intention of the legislature must prevail over that of the testator. After the devises were made to his daughters and the heirs of their bodies, his power of disposal ended. The statute operating upon the will vested a life estate in the devisees, Clarinda and Mary Jane, to the land devised to them respectively, with remainder in fee simple absolute in their respective heirs. Both dying without issue, the remainder in fee, upon their death, passed to and vested absolutely in their collateral heirs as tenants in common.

After the death of each devisee the land devised to her for life was subject to partition and to the application of the statute of limitation. As it is conceded that defendants and those under whom they claim had been in the adverse possession of the land in question, under color of title, for more than ten years after the youngest of the plaintiffs became of age, the judgment is for the right party and should be affirmed. All concur.