BUFORD v. KERR.

(Circuit Court of Appeals, Eighth Circuit. November 7, 1898.).

No. 1,063.

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS—RULE OF PROPERTY.

Where, by a course of decision in the courts of a state, certain language, when used in a deed, will, or other muniment of title, is held to create a certain estate, or to confer certain rights, a rule of property is thereby established, and the federal courts will give to such language the effect to which it is entitled by the local law.

2. SAME—CONSTRUCTION AND EFFECT OF STATE STATUTE.

Where the courts of a state have by uniform decision fixed the meaning and effect of a state statute relating to estates created by deed or will, such decision will be followed by the federal courts in cases originating in that state.

In Error to the Circuit Court of the United States for the Western District of Missouri.

This was a suit in ejectment to recover the possession of the S. E. ¼ of the S. E. ¼ of section 33, and an undivided one-half interest in the S. W. ¼ of the S. W. ¼ of section 34, township 50, range 32, situated in Jackson county, in the state of Missouri. The case was submitted to the lower court upon an agreed statement of facts, from which it appears: That both parties, John Buford, the plaintiff in error, and John A. Kerr, the defendant in error, derive title to the lands in controversy from Jacob Johnston, deceased, who died on July 25, 1851, seised of said land. That the deceased left, surviving him, six daughters, to wit, Mrs. Catherine Woodall, Mrs. Eliza Buford, the mother of the plaintiff in error, Mrs. Amanda Castleman, Mary Jane Johnston, Clarinda Johnston, and Julia Ann Johnston, and one son, Gordon P. Johnston. That all of said daughters are now dead, they having died in the following order, to wit: Clarinda Johnston, unmarried and childless, on July 25, 1851; Eliza Buford, November 11, 1860; Julia Ann Johnston, on February 14, 1864; Mrs. Amanda Castleman, on April 11, 1867; Mary Jane Johnston, on September 30, 1870; and Mrs. Catherine Woodall, on May 20, 1889. That, by his last will and testament, Jacob Johnston, deceased, devised separate tracts of land to his several daughters, the land in dispute in the present case being a part of that which was devised to his daughters Clarinda Johnston and Mary Jane Johnston, both of whom died leaving no issue. The language employed in making the devise to Mary Jane Johnston was as follows: "(7) I will and bequeath unto my dear daughter Mary Jane Johnston, and to the heirs of her body, the east ½ of the S. E. ¼, and the N. W. ¼ of the S. E. ¼, and the S. E. ¼ of the N. E. ¼, of section 33, township No. 50, and range No. 32, all the part of lot 37 in the town of Independence, by me purchased of Sam'l Weston's estate. * * *" The same language was used in making each of the devises to his other daughters, including Clarinda, the only difference being in the tract of land therein described. In the concluding paragraphs of the will, after the aforesaid devises, was found the following clause: "Finally, it is my will and desire that should any of my heirs above named die without issue of their body, that the property bequeathed to such heir shall be equally divided between my then surviving heirs, the same to vest absolutely in them and the heirs of their body, except my son, Gordon P. Johnston, who, it is my will, shall take his share absolutely himself." John Buford, the plaintiff below, and the plaintiff in error here, is the son of Eliza Buford, and a grandson of Jacob Johnston, deceased. He has acquired all the interest of his brothers and sisters, the other children of Eliza Buford, in and to the tracts of land in controversy, and he claims title to the same, it being a part of the land devised to his aunts Clarinda and Mary Jane Johnston, who died childless, under and by virtue of the aforesaid will of his grandfather. John A. Kerr, the defendant, claims title to the same premises by virtue of adverse possession under color of certain partition proceedings among the heirs of Jacob Johnston, deceased, which took place prior to the year 1871. He has held open, notorious,

90 F.—33

continuous, and exclusive possession of the property, adverse to all the world, since September 14, 1871. The question at issue in this case was before the supreme court of Missouri in the year 1894, and was decided by that court adversely to the claim preferred by the plaintiff. Brown v. Rogers, 125 Mo. 392, 28 S. W. 630. The circuit court followed the decision of the state supreme court, and the judgment below (86 Fed. 97) is before this court for review upon a writ of error sued out by the plaintiff.

O. A. Lucas (C. F. Moulton, on the brief), for plaintiff in error.

George W. Warner, Ed. E. Yates, M. A. Fyke, and C. V. Fyke, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The general question to be determined upon this record is whether this court is bound by the construction placed upon the will of Jacob Johnston, deceased, in Brown v. Rogers, 125 Mo. 392, 28 S. W. 630, or may express an independent judgment upon the merits of the controversy; and the decision of the latter question turns upon the further inquiry whether, in construing the language of the will, the supreme court of the state acted in accordance with a line of decisions in that state which are sufficient to establish a rule of property binding upon the federal courts. It is well settled that the federal courts will adopt the local law of real property, as ascertained by the decisions of the state courts, whether those decisions are grounded upon the construction of the statutes of the state, or form a part of its unwritten law. Therefore, when it appears that, by a course of decision in the courts of a state, certain language found in a deed, will, or other muniment of title is there held to create a certain estate, or to confer certain rights, the federal courts will give to such language the effect to which it is entitled by the local law. Jackson v. Chew, 12 Wheat. 153, 167, 168; Suydam v. Williamson, 24 How. 427; Bucher v. Railroad Co., 125 U. S. 555, 8 Sup. Ct. 974; Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10; Swift v. Tyson, 16 Pet. 1; Roberts v. Lewis, 153 U. S. 367, 14 Sup. Ct. 945.

In the case of Farrar v. Christy's Adm'rs, 24 Mo. 453, decided in 1857, a deed was made by one Christy to his two sons, Edmund and Howard, whereby two lots were conveyed by metes and bounds to each son, to be held by them respectively and their heirs, forever, upon condition, however, that, should either son die without leaving legal heirs of his body, the survivor should inherit the whole of the four lots conveyed. It was held, in substance, that at common law each son would have taken an estate tail in the two lots conveyed to him, but that by virtue of the operation of a statute abolishing entails, which was enacted in Missouri in 1825 (now section 8836, Rev. St. Mo. 1889, quoted below),[1] each son

[1] Section 8836: "In cases where by the common or statute law of England any person might become seized in fee-tail of any lands by virtue of any devise, gift, grant, or other conveyance, or by any other means whatever, such person, instead of being seized thereof in fee-tail, shall be deemed and adjudged to be and shall become seized thereof for his natural life only; and the remainder shall pass in fee simple absolute to the person to whom the estate-tail would,

took merely an estate for life in the lots conveyed to him, and that each son had a remainder in fee in the lots conveyed to his brother, which vested immediately upon the execution of the deed, and was subject to be defeated only by the birth of issue to him who held the life estate.

In the case of Harbison v. Swan, 58 Mo. 147, decided in 1874, the instrument under consideration was a will, which contained provisions substantially like those found in the will of Jacob Johnston, deceased, now under consideration. The testator had devised one parcel of land to his daughter Harriet, and another parcel to his daughter Juliet, upon condition that, if either daughter died without issue, the parcel devised to her should vest in the survivor, and that, in the event of the death of both without issue, the said parcels of land should vest in the heirs of his daughters Mary and Clarissa, to be equally divided among them when they became of age. It was held, following the decision in Farrar v. Christy's Adm'rs, supra, that the effect of the devise was to give to each daughter an estate for life in the lands devised to her, and a remainder therein in fee simple to her sister, which remainder was subject to be defeated only by the birth of issue to her who held the life estate; and that inasmuch as Harriet, one of the devisees, died childless, the remainder which vested in her sister Juliet was never devested, but descended on the death of Juliet to her heirs, and not to the heirs of Harriet. In this latter case the rule which was applied in Farrar v. Christy's Adm'rs, supra, was severely criticised by counsel, and the court was asked to ignore it because it tended to defeat the manifest intention of the testator. The court adhered, however, to the construction of the statute abolishing entails, that had been adopted in Farrar v. Christy's Adm'rs, saying, in substance, that it was the duty of the court to give full effect to the purpose of the statute, even though the result would be to defeat the purpose of the testator.

In the case of Thompson v. Craig, 64 Mo. 312, decided in 1876, which involved the construction of a will like the one under consideration in Harbison v. Swan, supra, the same construction of the will was adopted that had been approved in the previous cases, and Harbison v. Swan and Farrar v. Christy's Adm'rs were cited as controlling authority.

In Brown v. Rogers, 125 Mo. 392, 399, 28 S. W. 630, the supreme court of the state decided, in substance, that the statute of Missouri barring entails operated upon the will of Jacob Johnston, deceased, and had the effect of vesting a life estate in Clarinda Johnston and Mary Jane Johnston to the land respectively devised to them, with remainder in fee simple to their respective heirs; that, as both of said devisees died without issue, the land devised to them vested absolutely in their collateral heirs as tenants in common, and, after the death of Clarinda and Mary Jane Johnston, was clearly subject to partition. It resulted from this view that the defendant had a good title by virtue of the statute of limitations. The decision was in accordance with the doctrine announced in the three previous cases heretofore cited. We think that these cases are sufficient to establish a rule of property which the federal courts are bound to follow in adjudicating upon the title to

on the death of the first grantee, devisee or donee in tail, first pass according to the course of the common law by virtue of such devise, gift, grant or conveyance."

land situated in that state.    Moreover, the decisions contained an exposition of the meaning and effect of a local statute, from which the federal courts are not authorized to depart in cases originating in that state.    Travelers' Ins. Co. v. Oswego Tp., 19 U. S. App. 321, 7 C. C. A. 669, and 59 Fed. 58; Railroad Co. v. Hogan, 27 U. S. App. 184, 11 C. C. A. 51, and 63 Fed. 102; McElvaine v. Brush, 142 U. S. 155, 12 Sup. Ct. 156; Brown v. Furniture Co., 16 U. S. App. 221, 7 C. C. A. 225, and 58 Fed. 286.

It results from these views that we are not at liberty to consider and determine upon independent investigation whether the will of Jacob Johnston, deceased, created an executory devise, and saved the title to land in controversy to the plaintiff in error, as his counsel very earnestly contends.    We are precluded from entering upon that inquiry by a course of decision in the courts of the state, which we are constrained to hold is conclusive upon the point at issue.    The judgment of the circuit court is therefore affirmed.

