# BERWIND WHITE COAL MINING COMPANY, Complainant,

*v.*

# BORINQUEN SUGAR COMPANY, Dft.

------

San Juan, Equity, No. 897.

As to Rents of Property in Receiver's Hands.

Corporations—Limitation on Control of Land.

1. An individual cannot complain of a corporation because it controls more than 500 acres of land contrary to the provisions of the Joint Resolution of May 1, 1900, of the Congress of the United States, because this is a question to be determined solely upon complaint of the government, if at all.

Receivership—Reorganization—Opposing Creditors.

2. Because certain creditors of a corporation in the hands of a receiver opposed the plans of the reorganization committee, and al-

Note.—As to right of private person to contest power of corporation to take or hold property, see notes in 32 L.R.A. 293; 9 L.R.A.(N.S.) 689; 33 L.R.A.(N.S.) 355; 46 L.R.A.(N.S.) 72.

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

so the sale of the property under the reorganization, they are not not therefore' deprived of their status as creditors and of their right to oppose any irregularities which they deem to have been committed or to be imminent in carrying out the reorganization plan.

Receivership—Rents from Leased Property—Date of Accrual of Rents.

3. The property of a corporation in the hands of a receiver was leased and the property afterwards sold at public sale by order of the court, which sale was later confirmed. *Held*, that the rents in the hands of the receiver proceeding from the lease of the property relate back to the date of the purchase and belong to the purchaser of the property.

Opinion filed June 16, 1915.

Statement of Facts.

In the course of the proceedings on the creditors' bill in this cause, the main property of the defendant was sold on October 6, 1914, to satisfy the second mortgage and other preferred claims, and bought in by a committee of bondholders and others, known as the Reorganization Committee. Different questions connected with the master's report of sale have been passed upon, but its full confirmation has been awaiting the proposed reorganization of the property and its creditors, for which due provision was made by the decree of this court. Thereafter, on December 29, 1914, a further decree was entered for a deficiency judgment and sale of the remaining property of the company, containing provisions similar to the first decree. A sale was had under this decree on February 8, 1915, and in this, as in the previous instance, the property was bid in by the representatives of the reorganization plan. The second sale was

for the sum of $75,000 in bonds and common credits plus claims allowed priority by the court.   Different proceedings have been had upon this sale also, and its confirmation has awaited the proposed reorganization.   On March 15, 1915, without any special notice to other parties except the receiver, the Reorganization Committee, representing the great bulk of the creditors, petitioned the court, stating that a reorganization corporation, called the Central Pasto Viejo, Incorporada, had been organized in conformity with law, and the matter was set down for hearing.   Thereupon, on the 26th and 27th of March, the said sales were confirmed to the Central Pasto Viejo, Incorporada, as the successor of the Reorganization Committee, and the purchaser was allowed until October 15, 1915, to complete the details of reorganization.   On April 10, 1915, the petitioners or movants herein, Chase Ulman et al., filed an application seeking that the orders of confirmation be set aside because the terms set forth in the petition upon which the sale was confirmed vary from the bids heretofore made.   The grounds for this application are (1) that the term of payment has been so extended (2) that the reorganization plan contemplates the use of the fund in the hands of the receiver for the payment of the preferred claims, whereas by the terms of the bids the purchasers were to pay this money themselves, and (3) that the new corporation would thereby come into the ownership or control of more than 500 acres of land, contrary to the joint resolution of May 1, 1900.

*Messrs. Savage & Francis* for Ulman et al.

*Mr. Jorge Dominguez* for Central Pasto Viejo, Incorporada.

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

*Mr. Chas. Hartzell* for receiver.

HAMILTON, Judge, delivered the following opinion:

The motion is overruled as to the last ground. The matter of acreage controlled by corporations has more than once been determined by this court to be one for the government, and not for individuals to complain of, if at all. The other points require fuller consideration.

1. The Reorganization Committee contends that the applicants have no standing in court, inasmuch as they have opposed reorganization in all its phases, and cannot now be permitted to claim under the reorganization. This does not seem to be well taken. The applicants have been merely exercising their legal rights. They had the right to oppose the sales when made. It is true that at that time they could not have set up any claim under the sales, but that time is past. The sales have been confirmed and the applicants as nonassenting creditors must, under the terms of the decree, receive their share of the proceeds in cash. They have now become creditors under the reorganization instead of opponents of the reorganization, and have the right to oppose any irregularities which they deem to have been committed or to be imminent in carrying out this plan. The court would have no right to punish them for not assenting to the scheme, nor would it have the wish to do so if it had the right.

2. These creditors, however, have no more vested right to the details of the reorganization scheme than other creditors. It has seemed expedient to the court, in view of all the circumstances of the case, to allow about six months more to work out

all the details of the reorganization. Where there are a number of conflicting interests to be consulted, some at a distance, relating in part to a not only manufacturing, but an agricultural and transportation, business, the court is not willing to force the large majority in interest to proceed faster than they find practicable. Control of details of the reorganization was necessarily retained by the court, and the court has, in its discretion, extended the time. If there was any error in not notifying the dissentient minority of the application for extension, that has been cured by this minority coming in voluntarily and making opposition. Having heard them, however, the court sees no reason to change the decree so far as relates to the extension of time.

3. The remaining ground of the motion raises the question, to whom belong the rents which have accumulated in the hands of the receiver under orders previously made by the court approving the lease of the property for the past season to what is known as the Federal Syndicate? The argument of the applicant herein is that the Reorganization Committee needs and seeks this fund, amounting to some $60,000, in order to carry out the scheme of reorganization, while the applicants contend this fund was not applied for or granted to the reorganizers in any of the decrees of the reorganization plan. It would therefore, on this view, be an unexpected asset, belonging to the defendant company, and should be distributed among its creditors. The Reorganization Committee having agreed to take care of all preferred creditors, the applicants seek to have the rent fund distributed to the common creditors, that is to say, to themselves amongst others, on the theory that they will get only a percentage on bonds from the reorganization, and

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

will remain common creditors for the unpaid large percentage of such bonds.

On the other hand, the Reorganization Committee contend that, having bought all other assets of the defendant, the rent as an incident of the real property also goes to them. The two contentions therefore raise the question, To whom shall go the rent of real property held in receivership?

A receivership is a temporary status, whereby the property is kept in *statu quo* for the benefit of the person to whom it may ultimately be decreed in the suit. If the receiver had operated the property and made $60,000 profit, the result would have been the same as in the case at bar. On account of the uncertainty of the sugar conditions it was thought better for the receiver to lease the property on shares, and fortunately this has turned out to the advantage of the receivership. The present rents, however, are not something different from the hypothetical profits mentioned. What would be true of one would be true of the other.

4. Decisions in the different states of the Union throw some light upon the solution of the question, but there is no doubt that the decision of matters relating to land must primarily be. in accordance with the law of the place where the land lies, the *lex rei sitæ*. The fact that this was a sale in equity does not change the rule. The forms in equity are peculiar to this jurisdiction, but rights to land enforced will conform as far as possible to those fixed by local law. United States v. Fox, 94 U. S. 315, 24 L. ed. 192; United States v. Crosby, 7 Cranch, 115, 3 L. ed. 287; Suydam v. Williamson, 24 How. 427, 16 L. ed. 742; Hutchinson Invest. Co. v. Caldwell, 152 U. S. 65, 38

VIII. Porto Rico—11.

L. ed. 356, 14 Sup. Ct. Rep. 504. It is therefore important to determine what is the local law upon the subject of rents.

5. Land in Porto Rico comes under the class known as immovables, which are defined in the Civil Code of Porto Rico, §§ 333 and 335, which read as follows:

"Sec. 333. Immovables are, in general, those which cannot move themselves or be removed from one place to another.

"This definition, strictly speaking, is applicable only to such things as are immovable by their own nature, and not to such as are so only by the disposition of the law.

"Sec. 335. The following are immovables:

"1. Lands, buildings, roads, and structures of every kind adherent to the soil.

"2. Trees, plants, and ungathered fruits, while they are not separated from the land or form an integral part of an immovable.

"3. Everything attached to an immovable in a fixed manner, in such a way that it cannot be separated from it without breaking the matter or causing injury to the object.

"4. Statutes, reliefs, paintings or other objects of use or ornament, placed in buildings or on lands or tenements by the owner thereof in such a manner that they become attached permanently to the property.

"5. Machinery, vessels, instruments, or implements intended by the owner of the tenement for the industry or works that he may carry on in any building or upon any land, and which tend directly to meet the needs of the said industry or works.

"6. Animal houses, pigeon houses, beehives, fishponds or breeding places of a similar nature, when the owner has placed

or preserves them with the intention of keeping them attached to the tenement and forming a permanent part thereof.

"7. Manures or fertilizers intended for the cultivation of the land, when upon the place where they are to be employed.

"8. Mines, quarries, and slag lands, while the matter thereof forms part of the beds, and waters, either running or stagnant.

"9. Docks and structures which, though floating, are intended by their nature and the object for which they are designed, to remain at a fixed place in any river or lake, or on any shore.

"10. Administrative concessions for public works, and servitudes and other real rights, attached to immovables."

Section 336 goes further, and prescribes that immovables embrace certain incidents inherent in what is immovable itself. It reads as follows:

"Section 336. The following incorporeal things are considered as immovable from the object to which they apply:

"1. The usufruct and use of immovable things.

"2. Any right or obligation established on any immovable.

"3. Every action to recover an immovable or the whole of an inheritance."

Ownership of property, including immovables, is defined in §§ 354 and 356 of the Porto Rican Civil Code as follows:

"Section 354. Ownership is the right by which a thing belongs to some one in particular, to the exclusion of all other persons.

"Ownership confers the right to enjoy and dispose of things without further limitations than those established by law.

"The owner holds a right of action against the holder and the possessor of the thing in order to recover it.

"Section 356.   The ownership of a thing is vested in him who has the immediate dominion thereof, and not in any other person, notwithstanding the fact that he uses or enjoys in some manner the thing belonging to another."

Such ownership, whether of movables or immovables, carries with it all rights of accession.   This is expressed in §§ 360 and 361 as follows:

"Section 360.   The ownership of property, whether movable or immovable, carries with it the right, by accession, to everything which is produced thereby, or which is united thereto or incorporated therewith, either naturally or artificially.

"Section 361.   To the owner belong:

"1. The natural fruits.

"2. The cultivated fruits.

"3. The civil fruits."

Civil fruits include interest, as is declared in § 362, as follows:

"Section 362.   Natural fruits are the spontaneous productions of the soil, and the broods and other products of animals.

"Cultivated fruits are those produced by lands of any kind, through cultivation or labor.

"Civil fruits are the rents of buildings, the price paid for the lease of lands, and the amount of perpetual life or other similar incomes."

In connection with this should also be taken into account the provisions of § 453, which is as follows:

"A possessor in good faith becomes the owner of the fruits collected, so long as the possession is not legally interrupted.

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

"Natural and cultivated fruits are considered as collected from the time they are gathered or separated.

"Civil fruits are considered as daily proceeds, and belong, in that proportion, to the possessor in good faith."

The law therefore declares that the rents shall go with the land, that is to say, that the owner is usually entitled to the rents.

6. In the case at bar the lease contract, under which the rents were to accrue, was made before the second sale, under which the reorganizing corporation claims. The earlier period of this lease called for expenditures by the lessee, and the income in the nature of the sugar business could not come, and did not come, in any marked degree until after the second sale of the land in question. The lease did not provide for any partial payments of rent, nor does it furnish any basis for apportionment of the rent. This was to be paid, and in fact has been substantially paid, in one lump sum after the submission on the application in question.

It is under these circumstances that the question of ownership of the rents must be determined.

The Code of Civil Procedure, § 259 as amended May 28, 1904, provided: "Upon sale of real property, the purchaser is substituted to and acquires all the rights, title, interest, and claim of the judgment debtor thereto, and all his right, title, interest, and claim thereto at any time during any subsisting lien thereon by attachment in the action, or by the docketing of the judgment. When the estate is less than a leasehold of two years' unexpired term, the sale is absolute. In all other

cases the property is subject to redemption, as provided in this chapter.   .   .   ."

This section was repealed March 9, 1905 (Acts, p. 136), so far as it related to the redemption of property sold at public sale.   In the case at bar, however, there is no question as to redemption, and the section by the terms of this act would seem to be still in force unless complete omission from R. S. of 1911 repealed it.   On the same day an act as to judgments (Acts, p. 115) provided in § 7 that "a purchaser at a sale under execution or order of sale shall be deemed to be an innocent purchaser without notice, in all cases where he would be deemed to be such had the sale been made voluntarily by the defendant in person."

The law specially controlling this issue, however, is found in the Civil Code, §§ 1371 and 1404, which read as follows:

"Section 1371.   The vendor must deliver the thing sold in its condition at the time of the completion of the contract.

"All the fruits shall belong to the vendee from the day on which the contract was perfected."

"Section 1404.   In the three following cases the vendee shall owe interest from the time the thing is delivered until the payment of the price:

"1. Should it have been so stipulated.

"2. Should the thing sold or delivered produce fruits or income.

"3. Should he be in default in accordance with section 1067."

These contemplate the possible passing of title at a later date than the contract of sale and specifically provide that in such

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

a case as the one at bar the purchaser is entitled to the rents and the seller to interest upon the purchase price, whether provided in the contract or not. It is not necessary to determine whether these sections apply *ipso facto* to proceedings in equity in the Federal court. The motion in question brings the whole matter up for review, and the analogy of the above sections will be followed in this case. The result would be, therefore, that the contract of purchase by the reorganizing corporation or its predecessor must be held to date from the sale at which the committee was the successful bidder, and that the bidder must pay interest from that date, and on the other hand is entitled to rents from that date. This, of course, is dependent upon the confirmation of the sale, but this confirmation, when made, relates back to the sale itself. There is nothing else to confirm except that sale, and the sale must, therefore, be confirmed in its entirety and as of the date it was made. The confirmation decree now being passed upon will be amended so as to meet the above views.

It follows, therefore, that, upon the application now before the court, the decree of confirmation will be modified as above. Except to this extent, the motion is denied.

It is so ordered.